People of the State of Illinois, v. Robert Carlton, Appellant.

Gen. No. 49,707.

First District, Third Division.

April 15, 1965.

163

William E. Rattner and Richard J. Hayes, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

The defendant was tried by the court and found guilty of the illegal possession of narcotics. He was sentenced to a term of not less than five nor more than ten years. On appeal he argues that it was error to deny his motion to suppress the evidence of narcotics, as the arrest and search were illegal.

At about 9:30 p. m. on December 21, 1963, Chicago police officers Wayman Crigler and Lamont Knazze met a police informer in the lobby of the DuSable Hotel in Chicago. Crigler testified that the informer was reliable. Crigler had spoken with him ten or

twelve times and based on his information, narcotics arrests had been made in the past. On this occasion the informer said "They are using stuff and selling it up in Cat Eye Bob's [the defendant's] room," and gave the officers the room number. After checking the room number with the desk clerk, the police officers went upstairs and stationed themselves outside the door of the room. Approximately two or three minutes later, the door was opened by a man named Candy and the officers looked in the room and observed a man known as Eddie Walker with a hypodermic needle and an eye dropper in his left hand.

The officers entered the room, placed the occupants under arrest, and recovered the hypodermic needle which Walker dropped to the floor. At that time the officers made a search of the occupants. A search of the defendant revealed a hypodermic needle in his shirt pocket and in his righthand pants pocket a large tinfoil package which a field test revealed contained narcotics.

Under cross-examination Crigler testified that when they looked into the room the defendant Carlton was doing nothing; that they entered the room to arrest Walker who was committing an offense; and that "After we established the fact that Mr. Carlton was the lessee of the room, we placed him under arrest." Crigler testified that after arresting Walker, they searched Carlton and then searched the room. On cross-examination Officer Knazze testified that neither he nor his partner knocked at the door; that they did not have a search warrant; that they did not announce they were police officers before entering the room. The defendant did not give his permission for them to enter the room.

Defendant testified in his own behalf that on the evening of December 21, 1963, he was at home in his room at the DuSable Hotel in Chicago. There were

165

five other men with him. They had spent about two and one-half to three hours there drinking wine, laughing and talking. Defendant had been living in the room, No. 421, for only ten days, having moved there from Room 718, where he had lived for two months. Defendant's room, No. 421, had been previously occupied by one Shannon, a dealer in narcotics. The visitors to defendant's room were looking for Shannon because they had money to buy narcotics from him. Shannon had not been in defendant's room since defendant moved in there, except on one occasion when Officer Knazze was also there. One of the visitors, Ronald Freeman, known as "Candy," rose to leave because "the guy don't live here anymore. . . ." He opened the door to leave and as he did so, Officers Knazze and Crigler stopped him and entered the room.

Defendant further testified that as Freeman opened the door to leave, Officer Knazze stopped him and forced him back into the room. At that time no one had a hypodermic needle in his hand and none was in sight. Officer Knazze said, "Well, well, what is going on in here, we got a crowd tonight." He looked around the room and under the chairs. He found a hypodermic needle under the chair where Walker was sitting. Officer Crigler called the defendant over to him and asked what he had. On being told "nothing," Crigler felt defendant's pockets. He asked for the defendant's money, and defendant produced about $1.50 in change. The officer also recovered a tinfoil package which he opened. Walker and Carlton were taken to the police station. Carlton did not give permission for a search of his person. He first knew he was charged with unlawful possession of narcotic drugs the following day.

Defendant maintained throughout the trial that the substance in the tinfoil package was a mixture of "Dormin" and "Bonita," neither of which is a nar-

cotic; that it was for a friend who wanted it for his wife. Sergeant Charles Vondrack of the Chicago Police Crime Detective Laboratory identified the substance as a narcotic derivative. In rebuttal for impeachment purposes only, the state introduced the August 22, 1957 conviction of defendant for unlawful sale of narcotics, at which time he was sentenced to a term of not less than two years nor more than four years.

Defendant argues initially that there was no legal arrest and as a consequence there could be no search pursuant to an arrest, admittedly the only basis upon which a search would be lawful. An arrest without a warrant is lawful if a criminal offense has in fact been committed and the arresting officer has reasonable grounds for believing the person to be arrested committed it. People v. Boozer, 12 Ill2d 184, 145 NE2d 619. There is no clear rule for determining what are "reasonable grounds," but it has been held that they exist if the facts and circumstances known to the officer would warrant a prudent and cautious man in believing that the person arrested was guilty of an offense. People v. Bennie Jones, 31 Ill2d 42, 198 NE2d 821.

Probable cause for arrest existed in the instant case because of the informer's information and because of what the officers saw when they looked into the open hotel room. Reasonable grounds for believing a person has committed a criminal offense may be found in information furnished by an informer if the reliability of the informer has been previously established or independently corroborated. People v. Durr, 28 Ill2d 308, 192 NE2d 379; People v. Beattie, 31 Ill2d 257, 201 NE2d 396. The informer need not be brought to trial to testify and the state need not disclose his name when his testimony would be irrelevant on the question of guilt. People v. Durr, supra. In the

instant case Officer Crigler testified he had known the informer for over a year and had had ten or twelve previous conversations with him concerning narcotics activities and that he had made arrests as a result. The reliability of the informer was not challenged on cross-examination.

In addition, the officers observed an offense being committed when the apartment door was opened. They testified they saw Walker, a guest, with a hypodermic needle and an eye dropper in his hand. Defendant admitted that the door was opened by "Candy," and that the officers then entered. Defendant said however that Walker did not have a needle in his hand. Officer Crigler testified that Walker threw the needle to the floor. Significantly, the defendant acknowledged that a hypodermic needle was recovered from under the chair where Walker was sitting. The trial judge with full opportunity to determine the credibility of the witnesses resolved this factual issue against the defendant.

The Illinois Supreme Court recently upheld the denial of a motion to suppress in People v. Phillips, 30 Ill2d 158, 195 NE2d 717, a case strikingly similar to the instant case. In the Phillips case an informer told a police officer he had purchased narcotics from the defendant in the defendant's apartment; and arrangements were made for a controlled sale that afternoon. After the controlled sale the officer went to the address involved, spoke to the janitor, and proceeded to the defendant's apartment with two other officers. After a knock on the door the door was opened and the officer showed the defendant his badge. At the same time the defendant dropped his cigarette package on the floor. The officer looked in the room, saw two people lying on the bed, one of whom threw a needle and syringe on the floor. The officer went in, picked up the needle and syringe and his partner picked up

the cigarette package which contained four tin-foil packages containing heroin. The defendant at the door attempted to suppress the heroin. The court held the search was lawful, saying, (p 160):

> "The testimony of the police officer was that there was no entry into the defendant's apartment until after the officer had seen the hypodermic needle and syringe. Possession of those articles, except by physicians and other designated persons, is prohibited by statute. (Ill Rev Stats, 1961, c 38, par 22–50.) Apart from anything that had theretofore occurred, the officer had personal knowledge that an offense was being committed in his presence at the time that he entered the apartment. . . . No search was necessary to discover the needle and syringe, which were in plain view."

The Phillips case makes quite clear that there was probable cause for the arrest of Edward Walker.

■ Defendant argues, however, that even if there was sufficient cause for the police to conclude that a crime had been committed by Walker, there was no basis for concluding that the defendant had committed a crime. Even assuming there was no probable cause for the arrest and subsequent search of defendant on the basis of the testimony of the police informer, the Phillips case makes it clear that the search incident to a valid arrest is not limited to the person who committed the crime. Therefore there was no need to arrest the defendant before he was searched. When a lawful arrest is effected, a peace officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of protecting the officer from attack, preventing the person from escaping, or discovering the fruits of the crime. People v. Watkins, 19 Ill2d 11, 166 NE2d 433; People v. Peak, 29 Ill2d 343, 194 NE2d 322. We are of

the opinion that defendant was within an area definable as Edward Walker's immediate presence and that the police officers had the right to search for the purpose of protecting themselves from attack, preventing defendant's escape, and for discovering the fruits of the crime.

Defendant argues, however, that no reason was given for the officers not obtaining a search warrant after talking with the informer; that in the absence of an emergency which renders it impractical for an officer to obtain a search warrant, a search without a warrant is unjustified. Defendant relies on People v. Bankhead, 27 Ill2d 18, 187 NE2d 705, which in turn relies heavily on United States v. Johnson, 333 US 10, 68 S Ct 367, 92 L Ed 436. In the Bankhead case, a situation similar to that presented in the instant case was involved, except that the officers used a passkey to enter the defendant's hotel room. There, the court held there was credible testimony that information of a crime was given to the arresting officer and that the identity of the informer was known, but nothing was shown in the way of past experience to justify the conclusion that reliance by police on his information was reasonable. The court said, however, that the information related to a crime involving narcotic drugs, such crime usually being a solitary vice practiced in secrecy and seldom openly discoverable; that the crime was being committed in a hotel room, suggesting transitory offenders, and that the narcotics themselves might be consumed if the police did not act quickly. Following this, the court concluded that while the total circumstances afforded a reasonable basis for a search without a search warrant, it felt constrained to follow Johnson v. United States, supra. The authority of Johnson has been qualified by later United States Supreme Court cases. This has been recognized by the Illinois Supreme Court which said

170

the proper test is not whether the police officers had time to get a search warrant, but whether under all the circumstances the search was a reasonable one. People v. James Jones, 31 Ill2d 240, 201 NE2d 402. In the James Jones case the court said that Johnson, supra, had been decided before United States v. Rabinowitz, 339 US 56, 70 S Ct 430, 94 L Ed 653, that the Rabinowitz case overruled the prior holdings, and that a search warrant is no longer required solely upon the basis of the practicability of procuring it, but rather upon the reasonableness of the search after a lawful arrest.

Under the law as thus laid down, the facts in the instant case justified a search without a search warrant.

Judgment affirmed.

DEMPSEY, P. J. and SULLIVAN, J., concur.