THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* SAMUEL J. GREEN *et al.*, Defendants-Appellees.

(Nos. 57410-1 cons.;

First District (2nd Division)—June 10, 1974.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Lee T. Hettinger, Assistant State's Attorneys, of counsel), for the People.

No briefs for appellees.

Mr. PRESIDING JUSTICE HAYES delivered the opinion of the court:

Two records have been filed in this court. General No. 57410 involves a complaint filed against the defendant, Samuel Green, charging him with the offense of gambling in that on 17 February 1971 he used or kept an instrument or apparatus for the purpose of recording and registering bet wagers in violation of section 28—1(a)(5) of the Criminal Code. (Ill. Rev. Stat. 1971, ch. 38, par. 28—1(a)(5).) General No. 57411 involves a complaint filed against the defendant, Samuel Green, charging him with a similar offense on 19 February 1971. The complaints against the other defendants, John E. Turner, Aaron Atwater, Charles Lewis, Jr., and Roosevelt Ashley, do not appear in either of the records.

The trial court sustained defendants' pre-trial motion to suppress evidence seized incident to their arrests, holding that the arrests of the various defendants were illegal and that, therefore, the evidence seized incident thereto should be suppressed. The People appeal pursuant to Supreme Court Rule 604(a)(1). Ill. Rev. Stat. 1971, ch. 110A, par. 604 (a)(1).

No brief has been filed by the defendants. However, in accordance with the practice of the court, the appeal will be decided on its merits. *People v. Caruso* (1971), 2 Ill.App.3d 80, 276 N.E.2d 112.

The sole issue on appeal is whether the trial court wrongfully sustained the motion of defendants to suppress the said evidence.

At the hearing on defendants' motion to suppress the evidence, Police Officer Radcliffe, assigned to the vice-control division, gambling section, of the Chicago Police Department, testified that, under an assumed name, he applied for and obtained a job with the Schultze and Burch Biscuit Company, 33 West 35th Street, Chicago, Illinois, to investigate gambling activities suspected of being conducted on the company's premises. He worked there from about 2 February 1971 to about 25 February 1971. On 10 February 1971, Radcliffe was working on a conveyor belt. He observed defendant Samuel Green approach the conveyor belt. An employee who was working next to Radcliffe left the conveyor belt, walked over to Green, and Green opened a scratch sheet. They conversed and Radcliffe saw some United States currency passed to Green by the employee. He saw Green write something down on a slip of white paper and hand it to the employee. He heard Green state: "O.K., 5th race."

On 11 February 1971, Radcliffe had a conversation with another employee, who agreed to place a bet for Radcliffe. Radcliffe saw the man go into the locker room and walk up to Ashley, one of the defendants, and give Ashley a dollar Radcliffe had given him. The employee brought back a receipt. Radcliffe subsequently said that he had the conversation with the employee on 11 February 1971, but that the bet was placed on 16 February 1971. Radcliffe took the receipt which the employee gave to him and inventoried it. In Radcliffe's opinion it showed a "One dollar bet for the daily double bet at Balmoral for the numbers 6 and 1".

On 12 February 1971, at about 10:40 A.M., Radcliffe went to the locker room and observed Ashley seated on a bench with a pad, a pencil, and a scratch sheet in front of him. Employees were coming to Ashley and giving him money and receiving a receipt in return. An employee would come to Ashley, stand over the scratch sheets that he had, whisper something to him, and give him money; then Ashley would write something on the pad, tear off a carbon copy, and give it to the employee.

On 15 February 1971, Radcliffe asked Green to take a wager for him for a horse race. Radcliffe told Green he would like to place $2 on two separate daily doubles. Radcliffe placed $1 on the first race at the Fairgrounds for the fifth horse. He also placed $1 on the second race, No. 4 horse.

On 17 February 1971, at about 9:05 A.M., Radcliffe placed another wager with Green in the bake shop for the first race at Hialeah for the second horse, $1 to win. He received a receipt indicating that wager.

Radcliffe had a conversation with defendants Turner and Atwater on 17 February 1971 about playing the horses. At the end of the conversation, Turner pulled out an order pad from his locker and accepted a

wager from Radcliffe on the daily double at Balmoral. Radcliffe then gave Turner a dollar and Turner gave Radcliffe a receipt for the daily double, which Radcliffe could not now find.

Radcliffe later observed Atwater standing near a door to the washroom with other employees, reading scratch sheets. Every so often they would give Atwater money, he would jot something down on a piece of paper and give it to them, and they would leave.

On 19 February 1971, Radcliffe observed Roosevelt Ashley seated on a bench in the locker room with a scratch sheet and an order pad. Radcliffe told Ashley that, if Ashley would cash his paycheck, he would bet $5 on the fourth horse in the first race at Balmoral. Ashley gave Radcliffe the money from his paycheck less the $5, plus a receipt, which Radcliffe had with him at the hearing.

The three race horse betting receipts were introduced in evidence.

At about 11 A.M. on 19 February 1971, Radcliffe and his partners arrested four of the five defendants on the premises of Schultze and Burch Biscuit Company, and seized the evidence sought to be suppressed. The fifth defendant (Atwater) was arrested at his home.

The trial court refused to consider the evidence sought to be suppressed on the ground that it had been illegally seized because the State did not, at the hearing, produce the arrest warrants to show a legal arrest.

The State made an offer of proof that arrest warrants had been obtained from Judge Maher on 18 February 1971, after Radcliffe had filed the complaints; and that the arrest warrants had been served on the defendants, but had then been misplaced, and could not be produced at the hearing.

The trial court ruled that Radcliffe needed arrest warrants in order legally to arrest defendants; that the State was estopped from claiming the warrants existed when they could not be produced at the hearing; and that, since the arrests, viewed as warrantless, were illegal, the evidence seized incident to the arrests was illegally seized. The court stated that the testimony is replete with evidence that Radcliffe saw violations of law; and that he saw them on many occasions; but that it would be necessary for the police officers to have warrants in order legally to arrest the four defendants on the premises of Schultze and Burch Biscuit Company.

The court thereupon sustained defendants' motion to suppress the evidence seized incident to the arrests.

On this appeal, the State has chosen not to contest the ruling of the trial court (with which, however, it expresses its disagreement) that the State, owing to its inability to produce the warrants at the hearing, was estopped to prove that the arrests had in fact been made under warrants

properly issued and served. For the purposes of this appeal, therefore, the arrests must be deemed to have been warrantless arrests.

The State argues that the warrantless arrests in the case at bar were legal because Police Officer Radcliffe had observed each of the defendants accept, record, and remit receipts for, wagers placed with them by Radcliffe and other employees; that by reason thereof the defendants could be arrested without a warrant (Ill. Rev. Stat. 1971, ch. 38, par. 107—2(c)); and that the police officers could legally seize the evidence which was the subject matter of the motion to suppress.

■■ In *People v. Marino* (1970), 44 Ill.2d 562, 256 N.E.2d 770, the court held that an arrest may be made by a police officer without a warrant when he has reasonable grounds for believing that the person to be arrested has committed or is in the process of committing a crime; that whether reasonable grounds exist depends upon the totality of the facts and circumstances of the arrest; that such determination must be made upon practical considerations of every-day life upon which reasonable ground presupposes more than mere suspicion on the part of the arresting officer, an arrest may be made on something less than evidence which would result in conviction; and that probable cause may be founded upon evidence not admissible at the trial of the charge in question. The courts have also held that an arrest without a warrant is lawful if a criminal offense has in fact been committed and the arresting officer had reasonable grounds for believing that the person to be arrested committed it. *People v. Carlton* (1965), 58 Ill.App.2d 163, 206 N.E.2d 824, *cert. denied,* 384 U.S. 910; *People v. Adornetto* (1972), 3 Ill.App.3d 647, 279 N.E.2d 421.

The trial court based its decision on the fact that the business premises of Schultze and Burch Biscuit Company, where four of the arrests were made, were of a private nature and, therefore, the police could not arrest defendants on the premises without arrest warrants and could not seize the evidence without a search warrant.

■■ The colloquy indicates that the trial court relied on *People v. Abrams* (1971), 48 Ill.2d 446, 271 N.E.2d 37. In that case, two groups opposed to the war in Vietnam sponsored a "send-off" party to be held at the Abrams' home in Chicago. Leaflets announcing the date, hour, place, admission charge, and purpose of the gathering had been placed at several locations in the neighborhood to serve the function of a general invitation to all interested persons. A police lieutenant gave one of the leaflets to two police officers and instructed them to attend the gathering to check on what was going on. The officers went to the home, entered, purchased two tickets of admission at a table set up just inside the entrance way, and made some observations. They did not identify them-

selves as police officers, nor were they asked to do so. They observed the sale of liquor, and cups containing a liquid smelling of alcohol in the hands of persons who appeared to be under age. The officers then left, returned to their police station, and reported their observations. A discussion followed as to the probable violation of law involved, but no attempt was made to procure either an arrest warrant or a search warrant. The two officers were then instructed to return to the home, which they did in the company of three more officers. They entered and reached the admission table, where they were asked if they were police officers. They then so identified themselves, whereupon they were refused admission. One officer observed a youth seated at the admission table holding in his hand a cup containing a liquid. At the officer's request, the youth handed the cup to the officer who then stated that the liquid was an alcoholic beverage. The officer then announced to one of the defendants that a crime had just been committed in his presence, for which reason no search warrant was necessary. A minor scuffle ensued when the officers' further entry was blocked. Thereupon the officers blocked the exits and certain defendants were arrested. Then the officers attempted to re-enter the home for the announced purpose of locating the youth who had held the cup, which the officer still had. The re-entry was blocked and other defendants were then arrested. Exactly when Abrams was arrested was not clear, but the arrest was made during that evening on a charge of selling liquor without a license. Prior to the trial of Abrams on that charge, he made a motion to suppress all testimonial and physical evidence involved in the entire affair. The motion was denied. On appeal, the Supreme Court held that the first entry by the two officers was lawful, that their observations during that entry were not improper, and that the testimonial evidence involved during that entry was not subject to suppression. The second entry, however, was unlawful. The officers sought to justify it, not on the ground that probable cause for arrest existed from their observations during their first and lawful entry, but solely on the ground that a liquor offense was then being committed in their presence in that the young boy at the admission table was holding a cup containing an alcoholic beverage. Their second and unlawful entry had preceded that observation, and a search could not be justified by showing that the search brought to light grounds for an arrest. Hence, the physical evidence and the testimonial evidence obtained through the unlawful second entry should have been suppressed.

■■■ The *Abrams* case would appear to be on point only if: (1) the arrests of the four defendants were unlawful because made during an unlawful entry by the officers onto the private business premises of the Biscuit Company; and (2) for an offense observed by the officers pur-

suant to the unlawful entry. Neither essential element appears to exist. After some discussion of the impact of Officer Radcliffe's assumed name on the lawfulness of his entry and presence as an employee on the premises of the Biscuit Company, the trial court concluded that Radcliffe, as an employee, was on the premises at the invitation of the owner and had the same right to be there as did defendants. In any event, it seems clear that none of the defendants would have any standing to question the lawfulness of Radcliffe's entry and presence on the premises, nor were they agents of the Biscuit Company for that purpose. Secondly, the offenses for which they were arrested were the offenses which Radcliffe had observed each defendant to have committed on occasions from 10 February 1971 up to and including the morning of 19 February 1971. For those observed offenses, Officer Radcliffe had probable cause to make the several warrantless arrests, and, since the arrests were lawful, the evidence seized incident thereto (which apparently consisted of gambling paraphernalia used in accepting bets on horse races) was lawfully seized and could be used to support the charges against defendants.

The trial court erred in sustaining the defendants' motion to suppress.

The judgment of the trial court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Judgment reversed and cause remanded.

STAMOS and DOWNING, JJ., concur.