THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. TIMOTHY E. GALL *et al.,* Defendants-Appellees.

First District (4th Division)   No. 87—2473

Opinion filed June 2, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Terence M. Madson and Joan G. Fickinger, Assistant Attorneys General, of Chicago, of counsel), for the People.

Barry E. Burke, of Chicago, for appellees.

JUSTICE LINN delivered the opinion of the court:

This is an appeal by the State from an order quashing a warrantless arrest and suppressing evidence obtained at the time of the arrest. (107 Ill. 2d R. 604(a)(1).) The State contends that (1) under the totality of the circumstances the police had probable cause for the warrantless arrest of the defendants and (2) defendants lacked standing to contest the search.

Defendants, 12 individuals and two corporations, were charged with gambling offenses on November 28, 1986. (Ill. Rev. Stat. 1985, ch. 38, par. 28—1; Ill. Rev. Stat., 1986 Supp., ch. 120, par. 1132.) In their motion to suppress, defendants alleged they were at a private retirement party in a private room not open to the public where it was necessary to pay an admission fee, that police officers entered

the private party after paying the admission fee, left and then returned with 50 police officers, who did not pay the admission fee, and seized certain alleged gambling equipment without a warrant.

Palos Hills Detective Steven Cardamone testified at the suppression hearing that on November 28, 1986, at 7:30 p.m. an unidentified telephone caller told him of gambling activity at Kilarney Castle, a restaurant and banquet hall located at 103rd Street in Palos Hills. Cardamone then informed the police chief and the patrol commander, Don Cardamone, who directed Detective Cardamone and his partner, Sergeant Roach, to go to Kilarney Castle and investigate. The officers arrived at Kilarney Castle about 8:30 p.m. and paid a required $10 fee to enter. In one banquet room there was a bar and buffet and people were sitting at tables drinking and talking. In another room there was gambling paraphernalia—approximately 10 slot machines on round banquet tables, six blackjack tables, five of which were in operation with a dealer and five or six patrons. Several persons were playing with chips at a roulette table while others were throwing dice on a crap table. Cardamone took a seat at a blackjack table and gave the dealer $50 and received chips in $5 denominations marked "Mini-Vegas." When he finished playing, Cardamone went to a cashier's area, where he cashed in nine chips and received $45 from a bearded man named Ooms, one of the defendants.

Between 9:30 and 10 p.m., the detectives left Kilarney Castle and returned to the police station, where Cardamone informed the patrol commander and the chief of their findings. Since there were approximately 250 persons in Kilarney Castle, other police departments were contacted. The Hickory Hills police department provided five men, Palos Park sent two officers and Palos Hills, 12 to 15 officers. These officers then returned to Kilarney Castle at approximately 11 p.m. The officers entered the room where the gambling was taking place and arrested the individual defendants, who were the dealers and those who were working the tables. The items seized included six blackjack tables, 10 roulette tables, one dice-crap table, one roulette table along with a roulette wheel, numerous poker chips marked "Mini-Vegas" in denominations of $1, $5, and $25, dice, blackjack shoes, playing cards, tokens used in the slot machines and afterwards exchanged for currency, approximately $5,000 in currency, file cabinets, several boxes attached to tables, two cash drawers, a token-dispensing machine and preprinted cards used at the door, stating "Bob Cassidy Fund Raiser, donation $10." Officer Cardamone did not call the circuit court of Cook County to obtain a search warrant because he did not think he needed one. At that time he was not aware of the

Illinois Charitable Games Act (Ill. Rev. Stat., 1986 Supp., ch. 120, par. 1121 *et seq.*) and he did not check with the Illinois Department of Revenue to see if this was a sanctioned event.

It was stipulated that the premises were leased to Robert Gallway that evening, not to defendants, and that they were paid to participate in the games.

The court found there was no testimony that the activity was unlicensed, that the activity comported with that allowed under the Charitable Games Act, and that the officers did not have probable cause. The court rejected the State's argument concerning standing, concluding that everyone had standing to challenge his own arrest.

■ The State first contends that under the totality of the circumstances, the police had every reason to believe illegal gambling was taking place and no reason to believe that a charitable event was being held. In Illinois, a warrantless arrest is allowed only when a peace officer has reasonable grounds, *i.e.*, probable cause, to believe that the person is committing or has committed an offense. (*People v. Tisler* (1984), 103 Ill. 2d 226, 236-37, 469 N.E.2d 147; *United States v. Watson* (1976), 423 U.S. 411, 418, 46 L. Ed. 2d 598, 606, 96 S. Ct. 820, 825.) If the arrest is lawful, then evidence obtained during a warrantless search incident to that arrest is admissible to prove defendant's guilt. (*People v. Tisler*, 103 Ill. 2d at 237.) *People v. Tisler* discusses the circumstances when a police officer may credit an informant's tip, a matter discussed by the parties here, but we note that the trial court in making its finding gave no weight to the issue of the reliability of the unknown informant's tip. Furthermore, the informant issue is not decisive under these circumstances, where the officer independently corroborated the information that gambling was taking place.

■ On a motion to suppress evidence, the defendant has the burden of proving that the search and seizure were unlawful. (*People v. Hoskins* (1984), 101 Ill. 2d 209, 212, 461 N.E.2d 941.) The only witness called by defendants was Detective Cardamone, who described in detail the gambling activities which he observed and in which he participated. There can be little doubt that the officer's observations and actions were sufficient to establish probable cause to believe that the crime of gambling was being committed in his presence. (See *People v. Mitchell* (1983), 111 Ill. App. 3d 1026, 444 N.E.2d 1153; *People v. Green* (1974), 20 Ill. App. 3d 809, 314 N.E.2d 719.) The record indicates that when Detective Cardamone returned with additional officers, the situation was the same as when he had visited the premises earlier.

■ Possibly, as defendants suggest, the activity observed by Cardamone was lawful because it was licensed under the Charitable Games Act, which became effective on September 1, 1986. (Ill. Rev. Stat., 1986 Supp., ch. 120, par. 1121 *et seq.*) However, there is no evidence that defendants' activities were licensed. Moreover, an unlicensed charitable game constitutes gambling, in violation of section 28—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 28—1). (Ill. Rev. Stat., 1986 Supp., ch. 120, par. 1132.) For probable cause, the police need not have sufficient evidence to convict, which requires proof beyond a reasonable doubt. (*People v. Lekas* (1987), 155 Ill. App. 3d 391, 410, 515 N.E.2d 120.) Absent evidence that the individual or corporate defendants were, in fact, licensed, the possibility that the activity observed by Officer Cardamone was licensed and lawful was only theoretical.

■ A trial court's determination on a motion to suppress evidence will be overturned only if it is manifestly erroneous. (*People v. Hoskins*, 101 Ill. 2d at 212.) The totality of the present circumstances forcefully demonstrates that the police had probable cause to believe defendants were committing the offense of gambling based upon their own face-to-face observations of defendants. The proposition that the gambling activity was licensed by the Illinois Department of Revenue under the Charitable Games Act was not supported by any evidence introduced at the suppression hearing. As the State points out, the Charitable Games Act requires the licensee to file a copy of the license with the police department which has jurisdiction of the premises on which the charitable games are authorized under the license and to display the license in a prominent place in the area where it is to conduct the charitable games. (Ill. Rev. Stat., 1986 Supp., ch. 120, pars. 1124(4), 1124(5).) The uncontradicted evidence established police had probable cause to believe that illegal gambling was being conducted and defendants' arrests and the search incident thereto were proper and lawful. We conclude that the trial court's determination on the motion to suppress was manifestly erroneous.

Therefore, the order of the circuit court of Cook County is reversed, and the cause is remanded.

Reversed and remanded.

JOHNSON and McMORROW, JJ., concur.