(No. 56657.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. BARBARA J. HOSKINS, Appellee.

*Opinion filed February 22, 1984.—Rehearing denied March 30, 1984.*

CLARK and SIMON, JJ., dissenting.

Tyrone C. Fahner, Attorney General, of Springfield, and John A. Barra, State's Attorney, of Peoria (Michael B. Weinstein and Michael V. Accettura, Assistant Attorneys General, of Chicago, and John X. Breslin and Rita Kennedy Mertel, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

G. Joseph Weller, Deputy Defender, of the Office of the State Appellate Defender, of Elgin, for appellee.

JUSTICE WARD delivered the opinion of the court:

This appeal involves a search of the defendant's purse following her arrest for prostitution (Ill. Rev. Stat. 1981, ch. 38, par. 11—14(a)(2)). Based on evidence seized from her purse, she was charged by a criminal information with unlawful possession of a controlled substance (Ill. Rev. Stat. 1981, ch. 56½, par. 1402(b)) and unlawful possession of a hypodermic syringe and needle (Ill. Rev. Stat. 1981, ch. 38, par. 22—50), as well as with prostitution and resisting a police officer (Ill. Rev. Stat. 1981, ch. 38, par. 31—1). The circuit court of Peoria County granted the defendant's motion to suppress the evidence taken from her purse and reassigned the case for trial on the prostitution and resisting-a-police-officer charges. On the State's appeal, the appellate court affirmed the suppression of evidence in a Rule 23 order. (105 Ill. App. 3d 1202.) We granted the State's petition for leave to appeal. 87 Ill. 2d R. 315.

The parties stipulated that the arresting officers' case report reflected what they would testify to at trial concerning the circumstances surrounding the defendant's arrest and the search of her purse. Proceeding by stipulation at a hearing on a motion to suppress evidence is ordinarily not a felicitous decision. A police report typically does not contain the detail that testimony would

provide; there can be no cross-examination to challenge or refute, or redirect examination to explain or develop. In this case, however, what did occur is sufficiently clear for us to conclude that the trial court's order of suppression was manifestly erroneous.

On a motion to suppress evidence the defendant, of course, has the burden of proving that the search and seizure were unlawful. (Ill. Rev. Stat. 1981, ch. 38, par. 114—12(b); *People v. Berg* (1977), 67 Ill. 2d 65; 3 W. La-Fave, Search & Seizure sec. 11.2(b) (1978); E. Cleary & M. Graham, Illinois Evidence sec. 502.10 (3d ed. 1979).) A trial court's determination on a motion to suppress evidence will be overturned if it is manifestly erroneous. See *People v. Holloway* (1981), 86 Ill. 2d 78; *People v. Conner* (1979), 78 Ill. 2d 525; *People v. Fuentes* (1980), 91 Ill. App. 3d 71, 73.

On June 4, 1981, at about 12:23 a.m., the defendant approached an unmarked police car and allegedly, to use the language of the statute, agreed to perform an act of deviate sexual conduct with two Peoria police officers. When told that she was under arrest for prostitution, the defendant ran from the officers and either threw her purse to the ground or dropped it as she fled. Sergeant G. Lock, one of the officers, overtook her approximately 10 to 20 feet from the police car. The officer subdued the defendant after a struggle and handcuffed her hands behind her back. Her purse was then searched by Officer J. Hill and a yellow envelope was found. The envelope contained a hypodermic syringe with a yellow plastic needle cover and a metal mayonnaise jar cap with a white powdery substance adhering to it. Officer Hill performed a field test and determined that the substance contained cocaine, which is a controlled substance (Ill. Rev. Stat. 1981, ch. 56½, par. 1206(b)(4)).

At the hearing on the motion to suppress the envelope and its contents, the defendant conceded that her

arrest for prostitution was "appropriate." The State argued that the search of the purse was proper as incidental to a lawful arrest. Section 108—1 of the Code of Criminal Procedure of 1963 states the circumstances under which a search incident to a lawful arrest may be conducted:

"When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of:

(a) Protecting the officer from attack; or

(b) Preventing the person from escaping; or

(c) Discovering the fruits of the crime; or

(d) Discovering any instruments, articles, or things which may have been used in the commission of, or which may constitute evidence of, an offense." Ill. Rev. Stat. 1981, ch. 38, par. 108—1.

Defense counsel argued at the hearing that the search was not justifiable either as a check for weapons to protect the officers from attack or to prevent escape, since the defendant was handcuffed and was in custody. The attorney claimed that there were no fruits of the crime of prostitution which could be found. He said, too, that the search was not a conventional inventory as it was conducted "in the field" and the purse's contents were not itemized.

The trial court granted the motion and in doing so stated what it deemed was the issue for its decision:

"May a police officer, without consent or search warrant, and for the *sole* purpose of searching for weapons, search a person arrested for prostitution, when the arrested person is handcuffed and not in a position to escape nor use any weapon which may be found in the purse." (Emphasis in original.)

The police report referred to the search as one to discover weapons, and the trial court limited its consideration to that aspect. This plainly was erroneous. The proper approach for evaluating compliance with the fourth amendment is to objectively assess the officer's actions in light of

the facts and circumstances before him at the time without regard to his underlying intent or motivation. (*Scott v. United States* (1978), 436 U.S. 128, 135-38, 56 L. Ed. 2d 168, 176-78, 98 S. Ct. 1717, 1722-23.) The issue here was broader than what the trial court by its own statement examined. The question was whether the search of the purse under the circumstances violated the protection against unreasonable searches and seizures provided under the fourth amendment to the Constitution of the United States (U.S. Const., amend. IV), and under section 6 of the bill of rights in our State Constitution (Ill. Const. 1970, art. I, sec. 6).

The Supreme Court has explicitly held in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, that there is a "distinction in purpose, character, and extent between a search incident to an arrest and a limited search for weapons." The court explained:

> "The former, although justified in part by the acknowledged necessity to protect the arresting officer from assault with a concealed weapon, *Preston v. United States* [(1964), 376 U.S. 364, 367, 11 L. Ed. 2d 777, 780, 84 S. Ct. 881, 883], is also justified on other grounds, *ibid.*, and can therefore involve a relatively extensive exploration of the person." 392 U.S. 1, 25, 20 L. Ed. 2d 889, 908, 88 S. Ct. 1868, 1882.

The trial court, in ordering suppression, relied in part on *United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476, where a warrantless search of a footlocker more than an hour after the defendant's arrest was held not to be incident to the arrest. The trial court here granted the motion to suppress on the ground that the purse, when searched, was outside the area within which the defendant might have obtained a weapon.

*Chadwick* is not applicable here. There the Supreme Court stated that "[o]nce law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the ar-

restee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." (433 U.S. 1, 15, 53 L. Ed. 2d 538, 551, 97 S. Ct. 2476, 2485.) The footlocker in *Chadwick* understandably was not considered to be immediately associated with the arrestee's person. A purse is obviously different in size and character and has been considered to be different. The court in *United States v. Berry* (7th Cir. 1977), 560 F.2d 861, 864, stated that a purse "might be characterized as 'immediately associated with the person of the arrestee' because it is carried with the person at all times." (See also *People v. Helm* (1981), 89 Ill. 2d 34, 39-44 (Ward, Underwood, and Moran, JJ., dissenting), and cases cited therein; *United States v. Graham* (7th Cir. 1981), 638 F.2d 1111, *cert. denied* (1981), 450 U.S. 1034, 68 L. Ed. 2d 231, 101 S. Ct. 1748; *United States v. Venizelos* (S.D.N.Y. 1980), 495 F. Supp. 1277; *Stewart v. State* (Tex. Crim. App. 1981), 611 S.W.2d 434.) It seems clear in any sensible construction that a purse is "immediately associated with the person of the arrestee." Moreover, the Supreme Court subsequently made it clear in *New York v. Belton* (1981), 453 U.S. 454, 461-62, 69 L. Ed. 2d 768, 776, 101 S. Ct. 2860, 2865, that the search in *Chadwick* was invalid because it was not conducted contemporaneously with the defendant's arrest.

Before the appellate court, the State argued that the search was valid as incident to a lawful arrest, that the search was permissible since the defendant had abandoned her purse, and that the suppression motion should not have been granted since the contents of the purse inevitably would have been discovered during a routine and proper inventory search at the police station. The appellate court refused to consider the latter two arguments, saying that, as they were first raised on appeal, they had been waived. The court, relying principally on *People v. Helm* (1981), 89 Ill. 2d 34, and *People v. Lafayette* (1981), 99 Ill. App. 3d

830, affirmed the trial court's suppression order.

*Lafayette*, however, was held to be erroneous and was reversed by the Supreme Court in *Illinois v. Lafayette* (1983), 462 U.S. 640, 77 L. Ed. 2d 65, 103 S. Ct. 2605. There the court held that a warrantless station house search of a "purse-type shoulder bag" containing drugs and an inventory of the possessions of the person arrested were reasonable even though less intrusive means of serving the purposes of inventory may have been available. The Supreme Court's decision in *Lafayette* had the practical effect of overruling *Helm*, where this court, with three members dissenting, held that, if the purposes of an inventory could readily be accomplished by less intrusive means, a motion to suppress incriminating evidence discovered during a station house inventory of a purse should be allowed. See *People v. Settecase* (1983), 119 Ill. App. 3d 542.

The search here was proper under *United States v. Robinson* (1973), 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467. That case involved the warrantless search of the arrestee following his arrest for a traffic violation. In upholding the validity of the search and the seizure of drugs, the Supreme Court stated:

> "The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." (414 U.S. 218, 235, 38 L. Ed. 2d 427, 440-41, 94 S. Ct. 467, 477.)

The Court declared that it was in "fundamental disagreement" with the suggestion in the court of appeals' opinion "that there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest." 414 U.S. 218, 235, 38 L. Ed. 2d 427, 440, 94 S. Ct. 467, 477.

The search of the purse here was proper under *Robinson* as incident to the defendant's lawful arrest. See also *United States v. Moreno* (9th Cir. 1978), 569 F.2d 1049 (court held a search of a woman's purse after her arrest was a valid search incident to arrest); *People v. McElroy* (1976), 44 Ill. App. 3d 1047 (where a search of a purse disclosed a gun and marijuana, it was held that, upon lawful custodial arrest, full search as an incident thereto is proper).

Thus, *Robinson* authorizes a warrantless search of the defendant's purse, which is immediately associated with defendant's person, simply on the lawful, custodial arrest. The Supreme Court referred to its holding in *Robinson* as "a straight forward rule, easily applied, and predictably enforced." (*New York v. Belton* (1981), 453 U.S. 454, 459, 69 L. Ed. 2d 768, 774, 101 S. Ct. 2860, 2863.) And it is to be observed that the court in *Belton* extended *Robinson* by holding that all containers within the defendant's immediate control could also be searched regardless of the likelihood that a weapon or evidence of criminal conduct would be found. (453 U.S. 454, 461, 69 L. Ed. 2d 768, 775, 101 S. Ct. 2860, 2864.) It is important to observe that neither *Robinson* nor *Belton* can be distinguished on the ground that the holding rested upon the automobile exception to the fourth amendment discussed in *Carroll v. United States* (1925), 267 U.S. 132, 69 L. Ed. 2d 543, 45 S. Ct. 280. The Supreme Court made it clear in *Belton* that its decision did not involve any consideration of the so-called " 'automobile exception.' " (*New York v. Belton* (1981), 453

U.S. 454, 462-63 n.6, 69 L. Ed. 2d 768, 776 n.6, 101 S. Ct. 2860, 2865 n.6.) The opinion in *Robinson* concerned only the validity of a search incident to arrest. Although Robinson had been stopped for a traffic violation, the search of the arrestee's person which was discussed and decided there did not involve the automobile and the court made no reference to it in its opinion.

Any contention that it was intended that section 6 of the bill of rights in our own constitution was to be interpreted differently from the Supreme Court's interpretations of the search provisions of the fourth amendment to the United States Constitution cannot be supported. The constitutional debates do not indicate any wish or intent to provide protections against unreasonable searches and seizures broader than those existing under decisional interpretations under the fourth amendment to the United States Constitution. (See 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1523-45.)

It can be pointed out, too, that the search here was proper under section 108—1(d), which authorizes a search in the area of the arrested person's immediate presence for discovering "evidence of an offense." A purse may furnish evidence that its owner is engaged in prostitution. It may contain, for example, names and phone numbers of other prostitutes, of motel and hotel personnel and physicians treating venereal diseases, and paraphernalia used in prostitution. That the defendant threw her purse away as she fled from the police because it contained incriminating materials would seem reasonably probable to an arresting officer. Police officers must often act on a quick appraisal of the circumstances (*People v. Watkins* (1960), 19 Ill. 2d 11, 19), and to say from the cool position of hindsight that the officer acted unreasonably would itself be unreasonable.

The State argued before the appellate court that the search was proper because (1) the purse had been abandoned by the defendant; (2) inevitably the drugs and drug

paraphernalia would have been discovered through a police station inventory; and (3) it was a search incident to arrest. The appellate court held that, as the State had not urged the first two points at the suppression hearing, they were waived and the appellate court would not consider them. It is true of course that where a party raises a question for the first time on appeal it is considered waived and it may not be considered by the reviewing court. (The State acknowledges here that it waived these points by not arguing them at the hearing.) This court many times considers questions that a party has waived. (See *People v. Myles* (1981), 86 Ill. 2d 260, 271; *People v. Rehbein* (1978), 74 Ill. 2d 435, 439.) The party who waived the question is bound by his waiver, but the court, which has the responsibility of reaching a just decision, understandably is not. "However, the rule of waiver is a limitation on the parties and not on the courts, and a reviewing court may ignore the waiver rule in order to achieve a just result." *Augsburg v. Frank's Car Wash, Inc.* (1982), 103 Ill. App. 3d 329, 333; *People v. Dickerson* (1983), 119 Ill. App. 3d 568, 571.

We consider it proper to examine the State's questions regarding abandonment and inevitable discovery in light of the trial court's limiting its consideration on the hearing to the searching officer's motive.

The defendant either dropped or threw her purse to the ground as she fled from the police officers. In either event it can be said that she abandoned it. If dropped unintentionally, she made no effort to pick it up. She obviously intended to flee and escape and not return for the purse. The intent at that time was to abandon it. If she deliberately threw it away so she would not be found in possession of the drugs, the purse would also of course be judged to have been abandoned. "[E]ffects have been held to be abandoned when they were thrown from a moving car or motorcycle, when they were dropped to the ground by a pedestrian, when they were left behind in a place accessi-

ble to the general public, and when they were thrown out of the window of a residence." (1 W. LaFave, Search and Seizure sec. 2.6, at 369 (1978).) Certainly the defendant did not retain, but rather gave up, any expectation of privacy in the purse and its contents. She could not have an expectation that a purse lying in a public street would not be picked up and examined. (See *Smith v. United States* (D.C. App. 1972), 292 A.2d 150.) As Professor LaFave observed, "one can hardly expect privacy in an overcoat left on the street." 1 W. LaFave, Search and Seizure sec. 2.5(a), at 353 (1978).

Reasonably and clearly the protections against unreasonable searches and seizures do not extend to abandoned property, as the right of privacy in the property has been terminated. Abandoned property may be seized without probable cause. (1 W. LaFave, Search and Seizure sec. 2.6(b) (1978), citing Mascolo, *The Role of Abandonment in the Law of Search and Seizure: An Application of Misdirected Emphasis*, 20 Buffalo L. Rev. 399 (1971).) *People v. Sylvester* (1969), 43 Ill. 2d 325, involved an examination of a brown paper bag containing drugs which the defendant had placed on a public street curb immediately before entering a police car. This court stated:

> "In our judgment determination of the validity of the arrest is irrelevant as are the arguments relating to the reasonableness of a search, for in this case no 'search' ever occurred ***. The bag was sitting in plain and open view on the sidewalk curb where it had been abandoned by defendant, and its seizure by the officers under these circumstances in no way violated any constitutional rights of defendant. *People v. Martinez*, 257 Cal. App. 2d 270, 64 Cal. Rptr. 666; *United States v. Clark* (W.D. Pa.), 294 Fed. Supp. 1108." 43 Ill. 2d 325, 328.

Similarly, there was no "search" within the meaning of the constitutional protections against unreasonable searches and seizures here.

Though of course we do not found our holding here on

it, we would observe that the ground of inevitable discovery is also relevant. In the vast majority of appellate cases where it has been relied on, courts have accepted the inevitable-discovery test as proper in search and seizure questions. Broadly stated it is that, where the evidence of an offense obtained illegally would inevitably have been discovered lawfully, it will be considered admissible. See 3 W. LaFave, Search and Seizure sec. 11.4 (1978).

Here even if the warrantless street search and seizure of the defendant's purse were to be considered unreasonable, suppression of the evidence would not be required. A station house inventory of arrestees' possessions is a routine police administrative procedure. As stated, the Supreme Court held that such a search is reasonable in *Illinois v. Lafayette* (1983), 462 U.S. 640, 77 L. Ed. 2d 65, 103 S. Ct. 2605. An inventory search would have been made at the police station and it was inevitable that the evidence found in the defendant's purse would have been discovered by the police. See *Carlisle v. State* (1982), 98 Nev. 128, 642 P.2d 596; *Clough v. State* (1976), 92 Nev. 603, 555 P.2d 840.

For the reasons given, the trial court's order of suppression was manifestly erroneous. Accordingly, the judgments of the appellate and circuit courts are reversed and the cause is remanded to the circuit court of Peoria County for further proceedings consistent with this opinion.

*Judgments reversed;*
*cause remanded.*

JUSTICE CLARK, dissenting:

In spite of the fact that the defendant's hands were handcuffed behind her back, she was in the custody of a police officer, and her purse was 20 feet away on the sidewalk, the majority has today concluded that her purse was *on her person* and within her immediate control at the time it was searched, and therefore, the search of her purse was lawful and the trial judge's decision to grant her

motion to suppress was manifestly erroneous. The majority also concludes that, since the "police report referred to the search as one to discover weapons, and the trial court limited its consideration to that aspect" (101 Ill. 2d at 213), the trial judge's decision to grant the motion to suppress was erroneous. It is unimportant what the police report stated as the purpose of the search, and the trial judge did not limit his consideration only to the issue of a search for weapons. The trial court held that "the search was not reasonably necessary to protect the officers from the defendant, nor to prevent the defendant from escaping nor to discover fruits of the crime." Clearly, the trial judge's finding was not limited to the consideration of a search for weapons. And lastly, the majority has held that it will not allow the State to waive an issue, even though counsel, during oral argument before this court, stated: "We have to justify it [the search] under a search incident to an arrest because the other arguments were waived. Abandonment, inventory, they were clearly waived, as the appellate court noted." The majority has substituted its judgment for that of the State in its waiver of the abandonment, inventory, and inevitable-discovery theories which were available to it to justify this warrantless search, but which it chose to waive and therefore not argue. This court, after having determined that the search in this case was lawful and justified as a search incident to an arrest, has gratuitously gone further and discussed the other theories which the State did not raise and chose to waive. Since the majority had already resolved the question of whether the search was justified as incident to a lawful arrest, the sole assertion of the State, it should have limited its discussion to that issue.

It is a well-established rule in this State that a trial court's determination on a motion to suppress will not be overturned unless it is manifestly erroneous. (See *People v. Holloway* (1981), 86 Ill. 2d 78; *People v. Conner* (1979), 78

Ill. 2d 525; *People v. Williams* (1974), 57 Ill. 2d 239, *cert. denied* (1974), 419 U.S. 1026, 42 L. Ed. 2d 302, 95 S. Ct. 506.) I cannot agree with the majority that the trial court's decision to grant the defendant's motion to suppress in this case was manifestly erroneous; therefore, I dissent.

The trial court held that the evidence should be suppressed because no warrant was obtained to conduct a search of the purse or its contents and the search was not made pursuant to a routine inventory search by the police department. "[A]n inventory search is made to protect the arrestee's property by putting it in safekeeping while the arrestee is being booked or incarcerated and to insulate the police from later claims by arrestees that their property was stolen or mishandled while in police custody." (*People v. Helm* (1981), 89 Ill. 2d 34, 37.) The trial court held that, "[i]n the instant case, the search was not reasonably necessary to protect the officers from the defendant, nor to prevent the defendant from escaping, nor to discover fruits of a crime. The only concern or reason for the search was a general search for weapons. Since the area searched was not that within which the defendant might have gained possession of a weapon, the search, thereupon, became an unreasonable search."

The appellate court affirmed the circuit court's judgment, holding that the search was not justified as a search incident to an arrest because the defendant was handcuffed at the time her purse was searched and her purse was outside the area of her immediate control, so that it could not be argued that the search was necessary to protect the officers from attack or to protect evidence which the defendant might have destroyed.

The issue that was before us in this appeal was whether the warrantless search of the defendant's purse in this case was in violation of the fourth amendment to the Federal Constitution (constitutional prohibition against unreasonable searches and seizures) and section 6 of the Illinois bill

of rights (Illinois' constitutional prohibition against unreasonable searches and seizures) (U.S. Const., amend. IV; Ill. Const. 1970, art. I, sec. 6). Unless the search in this case was reasonable and within one of the exceptions of the warrant requirement, it was an unlawful search. (*Arkansas v. Sanders* (1979), 442 U.S. 753, 759-60, 61 L. Ed. 2d 235, 242, 99 S. Ct. 2586, 2590-91.) I believe that the evidence that was the subject of the motion to suppress in the instant case was obtained in violation of section 6 of the Illinois bill of rights and also the defendant's fourth amendment rights.

As the majority notes, for the first time, on appeal before the appellate court, the State raised three theories to justify the warrantless search of the defendant's purse. The three theories the State raised were: (1) the abandonment theory, (2) the inevitable-discovery theory, and (3) the search-incident-to-an-arrest exception to the warrant requirement. However, at the suppression hearing the State did not argue either the abandonment theory or the inevitable-discovery theory, so the defense was not given an opportunity to refute them. The appellate court held, in its Rule 23 order, that the State had waived the abandonment theory and the inevitable-discovery theory by failing to raise those theories at the trial court level. "It is an accepted principle of law that an issue not presented to or considered by the trial court cannot be raised by the appellant for the first time on review." (*People v. McAdrian* (1972), 52 Ill. 2d 250, 253.) As I previously stated, during oral argument before this court when counsel for the State was asked upon what theory the State was relying to justify the warrantless search of the defendant's purse, the assistant State's Attorney responded: "We have to justify it under a search incident to an arrest because the other arguments were waived. Abandonment, inventory, they were clearly waived, as the appellate court noted." The defendant was never afforded the opportunity to argue

during the suppression hearing against the abandonment theory or the inevitable-discovery theory, and the trial judge therefore never heard argument or ruled on those theories. Since the State relied solely on the search-incident-to-an-arrest exception to the warrant requirement, I believe that was the only assertion which was properly before us in this appeal.

Section 108—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 108—1) delineates the instances when a police officer may lawfully search a person incident to a lawful arrest. Section 108—1 provides:

> "When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of:
>
> (a) Protecting the officer from attack; or
>
> (b) Preventing the person from escaping; or
>
> (c) Discovering the fruits of the crime; or
>
> (d) Discovering any instruments, articles, or things which may have been used in the commission of, or which may constitute evidence of, an offense."
> Ill. Rev. Stat. 1981, ch. 38, par. 108—1.

In the instant case, the defendant's purse was not searched to protect the officers from attack. The officers had the defendant handcuffed with her hands behind her back, and her purse was approximately 20 feet away from her. It was not in her immediate presence as the statute requires.

The purse was not searched to prevent the defendant from escaping or her giving its contents to other persons. There were no other persons around, the police officer had the purse in his hands, and clearly the purse could not be utilized in any fashion to effectuate an escape.

I do not agree with the majority that the search was proper to discover the fruits of the crime of prostitution. The majority states that the purse might have contained "names and phone numbers of other prostitutes, of motel

and hotel personnel and physicians treating venereal diseases, and paraphernalia used in prostitution." (101 Ill. 2d at 218.) I am not persuaded that the items the majority mentions are fruits of the crime of prostitution. Most people carry the names and phone numbers of their friends, acquaintances and physicians. I do not agree that an address book would be evidence of the crime of prostitution. Also, "paraphernalia used in prostitution" could also be lawfully carried by a person who is not a prostitute. If money had changed hands in this case and the defendant had put the money in her purse or if the police had reason to believe that the defendant was a member of an organization planning to bomb a building and that a bomb was concealed in her purse, then this case may have presented an arguable position under section 108—1. Neither situation was the case here.

And lastly, I do not believe that the search of the purse can be justified under the auspices that it was searched to discover any instruments, articles, or things which may have been used in the commission of, or which may constitute evidence of, an offense because there was no probable cause for the police officer to believe that a woman arrested for the offense of prostitution would have any illegal substances in her purse.

Even if one of the subsections to section 108—1 was fulfilled, it still must be shown, according to section 108—1, that the purse was "within such person's immediate presence" in order that the search be declared reasonable. A purse that is 20 feet away, in the possession of a police officer, when the defendant's hands are handcuffed behind her back cannot be considered to be within her immediate presence.

"There is no uniform rule for determining the reasonableness of a search. The determination of that question must depend upon the facts of a given case." *People v. Seymour* (1981), 84 Ill. 2d 24, 35; *Illinois v. Gates* (1983),

462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317.

In the case at bar we were not dealing with what has been called the "automobile exception" to the fourth amendment warrant requirement—the defendant's purse was not searched in connection with the search of an automobile. The majority here has determined that *New York v. Belton* (1981), 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860, and *United States v. Robinson* (1973), 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467, were dispositive of the instant case. I cannot agree that those two cases are dispositive of the instant case. Those cases are clearly distinguishable from the case at bar.

*Robinson* and *Belton* involved the search of a vehicle. *Belton* involved a search for cannabis in the pockets of the defendant's coat that was located within an automobile after the arresting officer had ordered the defendant from his car and detected the odor of burnt marijuana. If *Belton* were an Illinois case the search might well have been governed by subsection (c) of section 108—1, "Discovering the fruits of the crime." Here, however, the State did not contend that any "fruits of the crime" may have been found in defendant's purse. Indeed, as defense counsel argued at the suppression hearing, "Now, Mr. Brandt has suggested that *Belton* is controlling. Well, I think that the fact that it was a cannabis case based upon the smell of cannabis totally distinguishes a search of a jacket within the vehicle from this case. Certainly Mr. Brandt is not going to argue that we expected the policeman to look into the purse and to find a prostitute committing an act of prostitution upon someone in the purse."

Even if the State's interpretation of *Belton* was correct, established Illinois law cannot be broadened in the scope of a search incident to an arrest by the Supreme Court's decision in that case. The Illinois legislature has enacted a statute on the subject of a search incident to an arrest, and it is controlling here. While the Supreme Court may change

the law from a Federal constitutional standpoint, Illinois courts must still follow the Illinois Code of Criminal Procedure. It is perfectly proper for Illinois to grant more protection to its citizens from unwarranted intrusions into their private belongings than the minimum Federal requirements under the fourth amendment to the Federal constitution.

It should also be noted that we were not concerned here with an inventory search of the defendant's belongings. Whether the defendant's purse could have been searched as part of a properly conducted inventory search at the police station was not at issue because her purse was searched prior to her being taken to the station.

It is clear, as the State agreed in oral argument, that its sole assertion was that, because the defendant was lawfully arrested, her purse could be searched without a warrant under the "search-incident-to-an-arrest exception" to the warrant requirement.

In *United States v. Robinson* (1973), 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467, the United States Supreme Court held:

> "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. \*\*\* [I]n the case of a lawful custodial arrest a *full search of the person* is not only an exception to the warrant requirement of the Fourth Amendment, but it is also a 'reasonable' search under that Amendment." (Emphasis added.) *United States v. Robinson* (1973), 414 U.S. 218, 235, 38 L. Ed. 2d 427, 440-41, 94 S. Ct. 467, 477.

Later, in *United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476, the Supreme Court clarified its holding in *Robinson* and held that "[u]nlike searches of the person (*United States v. Robinson* [(1973), 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467]; *United States v. Edwards* [(1974), 415 U.S. 800, 39 L. Ed. 2d 771,

94 S. Ct. 1234]), searches of possessions within an arrestee's immediate control cannot be justified by any reduced expectations of privacy caused by the arrest." (433 U.S. 1, 16 n.10, 53 L. Ed. 2d 538, 551 n.10, 97 S. Ct. 2476, 2486 n.10.) In *Chadwick,* the Supreme Court explained:

"The reasons justifying search in a custodial arrest are quite different. When a custodial arrest is made, there is always some danger that the person arrested may seek to use a weapon, or that evidence may be concealed or destroyed. To safeguard himself and others, and to prevent the loss of evidence, it has been held reasonable for the arresting officer to conduct a prompt, warrantless 'search of the arrestee's person and the area "within his immediate control" — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.' *Chimel v. California* [(1969), 395 U.S. 752, 763, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034, 2040]. See also *Terry v. Ohio* [(1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868].

\*\*\* However, warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the 'search is remote in time or place from the arrest' [citation], or *no exigency exists.* Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

\*\*\* In our view, when no exigency is shown to support the need for an immediate search, the Warrant Clause places the line at the point where the property to be searched comes under the exclusive dominion of police authority." (Emphasis added.) *United States v. Chadwick* (1977), 433 U.S. 1, 14-15, 53 L. Ed. 2d 538, 550-51, 97 S. Ct. 2476, 2485-86.

Again, in *United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157, the United States Supreme Court analyzed and redefined its holdings in its earlier

opinions. In *Ross* the court went as far back as its holding in *Carroll v. United States* (1925), 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280 (which dealt with the search of automobiles used to transport liquor in the prohibition era), to explain at length the basis for what has come to be known as the "automobile exception" to the fourth amendment. The court compared its holding in *Carroll* to its holding in *United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476. The court stated:

> "The rationale justifying a warrantless search of an automobile that is believed to be transporting contraband arguably applies with equal force to any movable container that is believed to be carrying an illicit substance. That argument, however, was squarely rejected in *United States v. Chadwick* [(1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476]." 456 U.S. 798, 809-10, 72 L. Ed. 2d 572, 584, 102 S. Ct. 2157, 2165.

The *Ross* court went on to explain:

> "The Court in *Chadwick* specifically rejected the argument that the warrantless search was 'reasonable' because a footlocker has some of the mobile characteristics that support warrantless searches of automobiles. The Court recognized that 'a person's expectations of privacy in personal luggage are substantially greater than in an automobile,' [citation], and noted that the practical problems associated with the temporary detention of a piece of luggage during the period of time necessary to obtain a warrant are significantly less than those associated with the detention of an automobile. [Citation.] In ruling that the warrantless search of the footlocker was unjustified, the Court reaffirmed the general principle that closed packages and containers may not be searched without a warrant. [Citations.] In sum, the Court in *Chadwick* declined to extend the rationale of the 'automobile exception' to permit a warrantless search of any movable container found in a public place." 456 U.S. 798, 811-12, 72 L. Ed. 2d 572, 585-86, 102 S. Ct. 2157, 2165-66.

In the instant case the defendant did not have posses-

sion of her purse when the police officer apprehended her; therefore, her purse cannot be said to have been within her immediate control. If the defendant had retained possession of her purse then a different factual situation would have been presented to this court.

If the police had waited to obtain a search warrant or if the search was conducted pursuant to a reasonable inventory search, it is clear that the search of the defendant's purse and the seizure of the evidence contained within the purse would have been lawful. See *Illinois v. Lafayette* (1983), 462 U.S. 640, 77 L. Ed. 2d 65, 103 S. Ct. 2605; compare *People v. Helm* (1981), 89 Ill. 2d 34 (inventory search of defendant's purse was held impermissible because it did not reasonably fall under an exception to the warrant requirement); *People v. Bayles* (1980), 82 Ill. 2d 128 (inventory search of defendant's suitcase was held invalid because not reasonable under the circumstances of that case); *People v. Hamilton* (1979), 74 Ill. 2d 457 (inventory search of defendant's suitcase declared unreasonable because there was no proper governmental purpose served by, and no reasonable justification for, the warrantless intrusion into the defendant's briefcase in which he had a substantial expectation of privacy).

In *Illinois v. Lafayette* (1983), 462 U.S. 640, 77 L. Ed. 2d 65, 103 S. Ct. 2605, the United States Supreme Court decided the issue of whether, at the time an arrested person arrives at a police station, the police may, without obtaining a warrant, search a shoulder bag carried by that person. The court held "that the inventory search constitutes a well-defined exception to the warrant requirement." (462 U.S. 640, 643, 77 L. Ed. 2d 65, 69, 103 S. Ct. 2605, 2608.) The court stated that "factors justifying a search of the person and personal effects of an arrestee upon reaching a police station but prior to being placed in confinement are somewhat different from the factors justifying an immediate search at the time and place of arrest.

\*\*\* Police conduct that would be impractical or unreasonable—or embarrassingly intrusive—on the street can more readily—and privately—be performed at the station." (462 U.S. 640, 645, 77 L. Ed. 2d 65, 70-71, 103 S. Ct. 2605, 2609.) While it is but a concurring opinion, it is interesting to note that Justice Marshall, with whom Justice Brennan joined, stated:

> "A very different case would be presented if the State had relied solely on the fact of arrest to justify the search of respondent's shoulder bag. A warrantless search incident to arrest must be justified by a need to remove weapons or prevent the destruction of evidence. See *United States v. Robinson* [(1973), 414 U.S. 218, 251, 38 L. Ed. 2d 427, 450, 94 S. Ct. 467, 484 (Marshall, J., dissenting, joined by Douglas and Brennan, JJ.)]; *Chimel v. California* [(1969), 395 U.S. 752, 763, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034, 2040]; *United States v. Rabinowitz* [(1950), 339 U.S. 56, 72, 94 L. Ed. 653, 663, 70 S. Ct. 430, 437-38 (Frankfurter, J., dissenting, joined by Jackson, J.)]. Officer Mietzner did not in fact deem it necessary to search the bag when he arrested respondent, and I seriously doubt that such a search would have been lawful. A search at the time of respondent's arrest could not have been justified by a need to prevent the destruction of evidence, for there is no evidence or fruits of the offense—disturbing the peace—of which respondent was suspected. Moreover, although a concern about weapons might have justified seizure of the bag, such a concern could not have justified the further step of searching the bag following its seizure. *Cf. United States v. Chadwick* [(1977), 433 U.S. 1, 15, 17 & n.2, 53 L. Ed. 2d 538, 550-51, 552 & n.2, 97 S. Ct. 2476, 2485, 2486 & n.2 (Brennan, J., concurring)]." 462 U.S. 640, 649, 77 L. Ed. 2d 65, 73, 103 S. Ct. 2605, 2611 (Marshall, J., concurring, joined by Brennan, J.).

Also, in the recent case of *Florida v. Royer* (1983), 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319, the United States Supreme Court held:

> "The Fourth Amendment's prohibition against unreasonable searches and seizures has always been interpreted

to prevent a search that is not limited to the particularly described 'place to be searched, and the persons or things to be seized' [U.S. Const., amend. IV], even if the search is made pursuant to a warrant and based upon probable cause. The Amendment's protection is not diluted in those situations where it has been determined that legitimate law enforcement interests justify a warrantless search: the search must be limited in scope to that which is justified by the particular purposes served by the exception. For example, a warrantless search is permissible incident to a lawful arrest because of legitimate concerns for the safety of the officer and to prevent the destruction of evidence by the arrestee. *E.g., Chimel v. California,* [(1969), 395 U.S. 752, 763, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034, 2040.] Nevertheless, such a search is limited to the person of the arrestee and the area immediately within his control. [395 U.S. 752, 762, 23 L. Ed. 2d 685, 693, 89 S. Ct. 2034, 2039.] *Terry v. Ohio, supra,* also embodies this principle: 'The scope of the search must be "strictly tied to and justified by" the circumstances which rendered its initiation permissible.' [392 U.S. 1, 19, 20 L. Ed. 2d 889, 904, 88 S. Ct. 1868, 1878], quoting *Warden v. Hayden* [(1967), 387 U.S. 294, 310, 18 L. Ed. 2d 782, 794, 87 S. Ct. 1642, 1652 (Fortas, J., concurring, joined by Warren, C.J.).] The reasonableness requirement of the Fourth Amendment requires no less when the police action is a seizure permitted on less than probable cause because of legitimate law enforcement interests. The scope of the detention must be carefully tailored to its underlying justification." 460 U.S. 491, 499-500, 75 L. Ed. 2d 229, 237-38, 103 S. Ct. 1319, 1325.

In *People v. Redmond* (1979), 73 Ill. App. 3d 160, the court dealt with a factual situation very similar to that presented in the instant case. The defendant in *Redmond* was stopped for a traffic violation. After stepping outside of his automobile, a scuffle took place between one of the police officers who had stopped the defendant and the defendant. During the scuffle, a purse the defendant had slung over his shoulder was knocked to the ground. One of the policemen picked up the purse and, in examining its contents,

found three envelopes which contained cannabis. The court held that the warrantless search of the defendant's purse could not be justified under the rationale of *Chadwick* because there was no compelling or necessary purpose justifying the police officers' warrantless intrusion into the defendant's purse at that time or location. 73 Ill. App. 3d 160, 174.

While the majority does not address the issue, the State asserts that *Redmond* is no longer good law in Illinois because of the *Belton* and *Robinson* decisions. I believe those Federal cases involved automobile searches and were treated differently by the United States Supreme Court for purposes of the fourth amendment.

· In the instant case, where the defendant was lawfully under arrest, but her purse was outside her immediate control and within the exclusive control of a police officer, there was no justification under section 108—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 108—1) for the warrantless search of the defendant's purse. Nor do I see that this case falls under any exception to the fourth amendment.

Given the circumstances in this case, I believe that the circuit court's order granting the defendant's motion to suppress was not manifestly erroneous. I therefore respectfully dissent.

JUSTICE SIMON joins in this dissent.

JUSTICE SIMON, also dissenting:

I join in Justice Clark's dissenting opinion. I also wish to express my disagreement with the majority's statement that, in interpreting the proscription against unreasonable searches and seizures contained in article I, section 6, of our State Constitution, we are bound to follow automatically the decisions of the United States Supreme Court interpreting the comparable provision contained in the fourth amendment to the Federal Constitution. (101 Ill. 2d at

218.) When a majority of the United States Supreme Court has adopted an interpretation of the Bill of Rights that we believe is insufficiently ample to effectively implement those guarantees, we are not frozen by it in interpreting the comparable provisions of our State Constitution. (See *People v. Rolfingsmeyer* (1984), 101 Ill. 2d 137, 143 (Simon, J., specially concurring).) I believe that under our State Constitution warrantless searches and seizures are only "reasonable" when they are based on and carefully limited to some exigency or other compelling State interest such as the security of our jails and prisons. Even if warrantless searches incident to arrest were not limited by the requirements of exigency under the Federal Constitution and under the Illinois Code of Criminal Procedure, such searches would be so constrained under our State Constitution. Accord, *People v. Gokey* (1983), 60 N.Y.2d 309, 457 N.E.2d 723, 469 N.Y.S.2d 618 (rejecting *New York v. Belton* (1981), 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860, and holding that under the New York Constitution "an individual's right of privacy in his or her effects dictates that a warrantless search incident to arrest be deemed unreasonable unless justified by the presence of exigent circumstances").

In *State v. Ringer* (1983), 100 Wash. 2d 686, 699, 674 P.2d 1240, 1247, the Washington Supreme Court recently acknowledged that it had, over a period of years, neglected its "own state constitution to focus instead on protections provided by [the Fourth Amendment]." It announced in that case that the time had come "to return to the protections of our own constitution and to interpret them consistent with their common law beginnings." (100 Wash. 2d 686, 699, 674 P.2d 1240, 1247.) Based on the search and seizure clause of the Washington Constitution, the court said:

"[W]hen a lawful arrest is made, the arresting officer may search the person arrested and the area within his immediate control. [Citation.] A warrantless search in

236

this situation is permissible only to remove any weapons the arrestee might seek to use in order to resist arrest or effect an escape and to avoid destruction of evidence by the arrestee of the crime for which he or she is arrested. [Citations.] *The right to search incident to arrest \*\*\* must be 'jealously and carefully drawn', and must be strictly confined to the necessities of the situation.* [Citation.]

In the present cases neither the search of defendant Corcoran's car nor of defendant Ringer's van can be justified as a search incident to arrest. [*In both cases the suspect] had been handcuffed and placed in a patrol car when police searched his vehicle."* (Emphasis added.) (100 Wash. 2d 686, 699-700, 674 P.2d 1240, 1248.)

The time has come for the Illinois Supreme Court to recognize its independent obligation to interpret the bill of rights contained in the Illinois Constitution, and to make its own assessment of the appropriate balance between the privacy rights of our citizens and the legitimate requirements of law enforcement.