THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLAUDE ELLIS, Defendant-Appellant.

First District (6th Division)   No. 1—90—3393

Opinion filed February 5, 1993.—Rehearing denied March 11, 1993.

Dennis M. Doherty, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Janet C. Mahoney, Special Assistant State's Attorney, and Renee Goldfarb and Theodore F. Burtzos, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GIANNIS delivered the opinion of the court:

Defendant, Claude Ellis, was arrested on July 16, 1988, and charged with possession of a controlled substance with intent to deliver. Upon posting a cash bond, defendant was released from custody. On October 9, 1988, defendant was again arrested and charged with possession of a controlled substance with intent to deliver. This arrest arose out of events completely separate and distinct from the events which resulted in the arrest of July 16, 1988. Defendant was convicted of both offenses after separate trials conducted in July 1990.

Upon conviction for the July 16, 1988, offense, defendant was sentenced to a term of 12 years. On appeal, defendant contends that he was improperly sentenced under a statute which specified a greater volume of cocaine than was proven by the State. After defendant was found guilty of the October 9, 1988, offense, he was sentenced to a term of eight years. The trial court ordered that this sentence be served consecutive to the penalty imposed for the previous conviction. Defendant appeals his second conviction, asserting that his fourth amendment rights were violated and that the court erred in ordering that the two sentences be served consecutively.

Although these actions have been consolidated on appeal, we will address them separately because defendant has raised separate and distinct grounds for reversal.

APPEAL FROM THE CONVICTION FOR THE JULY 16, 1988, OFFENSE

Based upon information received through an anonymous tip, Chicago police officers set up surveillance near defendant's home in Chicago on July 16, 1988. Members of the surveillance team observed defendant remove packets of white powder from the trunk of his car and place those packets into a white plastic shopping bag. When defendant saw the surveillance unit, he walked to the edge of the street and put the white plastic bag down on the curb. The officers then arrested defendant and seized the plastic bag. At trial, the State produced the white plastic shopping bag. Inside this bag were 16 separate packages of white powder, one of which was a large, clear plastic bag. The remaining 15 packages consisted of smaller, individually sealed packets.

Chicago police department chemist Margaret Kampert testified that the clear plastic bag of white powder weighed 240.9 grams. Kampert also weighed 3 of the 15 smaller packets and found that they weighed 28.22 grams, 9.91 grams, and 7.36 grams, respectively. The total weight of these four bags amounted to 286.40 grams. Kampert testified that she did not weigh the remaining 12 packets, but instead estimated their weight and, based upon that estimation, concluded the total weight of all 16 bags was 463.30 grams.

Kampert stated further that she conducted three screenings and one conclusive test for controlled substances on the contents of the clear plastic bag weighing 240.9 grams. The results of these tests established the presence of cocaine. Kampert testified that she conducted preliminary tests on the three smaller packets, and the results of those tests also indicated the presence of cocaine. Kampert did not, however, test the remaining 12 packets. Several months later, Kampert conducted another test on the powdered substance contained in the clear plastic bag which weighed 240.9 grams. Upon examination of this test result, Kampert determined that the powdered substance was cocaine with a 95% purity level.

Defendant was found guilty of possession of a controlled substance with intent to deliver.

At the sentencing hearing, the prosecutor opened his remarks by stating that the first offense "involved 463 grams of cocaine, which according to the statute, carries a minimum of 12 years, and a maximum sentence of 50 years." Defense counsel did not object or make any attempt to correct this statement. After additional arguments in aggravation and in mitigation, the trial judge sentenced defendant to 12 years, but did not specify the statutory subsection upon which his sentencing decision was based. The indictment and the mittimus reflect only that defendant was charged and sentenced under section 401(a)(2).

Defendant contends that the sentence imposed for this offense must be vacated or reduced because it was based upon the wrong statutory subsection.

■■ The State initially claims that defendant has waived his right to object to this sentence by failing to raise the objection at the sentencing hearing and by failing to file a post-sentencing motion challenging the sentence. (See *People v. Morrison* (1985), 137 Ill. App. 3d 171, 185, 484 N.E.2d 329.) We note, however, that a motion to reduce a sentence is not required, and the failure to file such a motion will not result in waiver of the issue on appeal. *People v. Thomas* (1990), 193 Ill. App. 3d 525, 527, 550 N.E.2d 29.

Defendant asserts that the trial court erred in sentencing him under the statutory subsection which mandated a penalty of 12 to 50 years where the State has proven possession of 400 to 900 grams of cocaine. (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2)(C).) Defendant claims that in imposing a sentence of 12 years, the trial judge relied upon the prosecutor's statement that defendant possessed 463.3 grams of cocaine and improperly considered the volume of white powder in all 16 packages. On appeal, defendant argues that he should have been sentenced under the section providing a penalty of 9 to 40 years where the State has proven possession of 100 to 400 grams of cocaine. Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2)(B).

■■ Where separate bags or containers of a suspected drug are seized, a sample from each bag or container must be conclusively tested to prove that it contains a controlled substance. (*People v. Hill* (1988), 169 Ill. App. 3d 901, 911, 524 N.E.2d 604; *People v. Ayala* (1981), 96 Ill. App. 3d 880, 882, 422 N.E.2d 127; *People v. Games* (1981), 94 Ill. App. 3d 130, 131, 418 N.E.2d 520.) Consequently, defendant's sentence must be predicated upon that volume of powdered substance which was accurately weighed and conclusively tested for the presence of cocaine.

In the instant case, only the substance in the large clear plastic bag was accurately weighed and conclusively tested by Kampert. According to Kampert's testimony, she weighed only 3 of the 15 smaller packets and estimated the weight of the other 12. In addition, Kampert did not conclusively test any of the 15 smaller packets to verify the presence of cocaine. Rather, she conducted screening tests on the three packets which she had weighed. The remaining 12 packets were not subjected to any tests at all.

This evidence established that Kampert had fulfilled the examination requirements for only the largest of the 16 packages recovered from defendant. Accordingly, defendant's sentence must have been based upon the 240.9 grams of cocaine contained in the large clear plastic bag. We find that defendant's 12-year sentence was proper under the section which mandates a term of 9 to 40 years where the State has proved that defendant possessed between 100 and 400 grams of cocaine. Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2)(B).

■■ A court of review must presume the trial court considered only competent evidence unless the contrary affirmatively appears of record. (*People v. Schmitt* (1989), 131 Ill. 2d 128, 138-39, 545 N.E.2d 665; *People v. Richardson* (1988), 123 Ill. 2d 322, 361, 528 N.E.2d 612, *cert. denied* (1989), 489 U.S. 1100, 103 L. Ed. 2d 943, 109 S. Ct. 1577.) In the instant case, the trial judge heard the evidence pre-

sented by the State and was aware that only the bag weighing 240.9 grams had been accurately weighed and conclusively tested for the presence of cocaine. Absent a showing to the contrary, we must presume that the trial court sentenced defendant under the applicable statutory section and according to the amount of controlled substance which was proven at trial. We find no indication in the record that defendant was sentenced under the wrong statutory section, and we hold defendant has not established that the court's sentencing decision was influenced by the opening remarks of the prosecutor.

The imposition of a sentence is a matter of judicial discretion and, absent an abuse of this discretion, the sentence of the trial court may not be altered upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.) The 12-year sentence imposed by the trial court was well within the applicable statutory limits. (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2)(B).) The sentencing judge heard the evidence adduced at trial, considered the evidence presented in mitigation and in aggravation, including defendant's prior convictions. We find no abuse of discretion by the trial court. Consequently, the sentence for this offense will not be vacated or reduced. In accordance with this finding, we order that the mittimus be corrected to reflect the particular statutory subsection under which defendant was sentenced. Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2)(B).

### APPEAL FROM THE CONVICTION AND SENTENCE FOR THE OCTOBER 9, 1988, OFFENSE

Defendant was arrested on October 9, 1988, after police officers found cocaine in a brown paper grocery bag which they had seen defendant toss into a yard. Defendant was indicted and subsequently convicted of one count of possession of a controlled substance with intent to deliver. On appeal, defendant contends that the trial court erred in denying his motion to quash his arrest and to suppress the physical evidence against him. Defendant argues that the search of the brown paper bag was conducted in violation of his constitutional rights under the fourth amendment where (1) he had not abandoned the brown paper bag, (2) he did not give the officers permission to search the bag, and (3) the officers did not have probable cause to search the bag.

Defendant called Elizabeth Anderson as a witness at the hearing on his motion to quash arrest and to suppress evidence. Ms. Anderson testified that on the night of his arrest, she and defendant went to a movie and then returned to her apartment at 1519 South Tripp in Chicago, Illinois. At about midnight, Ms. Anderson was on the porch

with her mother, Annie Anderson, and with defendant's sister, Dolores Branch. While the women were talking on the porch, defendant was in the yard on the side of the building near the porch. According to Ms. Anderson, defendant was breaking glass to put into rat holes when the police officers arrested and searched him.

Ms. Anderson testified further that after the police officers searched defendant, they put him in a police car. Thereafter, the officers walked to the back yard and searched several "junk" cars which were parked on the lawn behind the house. According to Ms. Anderson, the officers removed from one of the cars a leather travel bag which contained money. Ms. Anderson stated that defendant had given her the leather bag earlier that evening and asked that she put it under the seat of one of the cars. In accordance with defendant's request, Ms. Anderson placed the bag under the front seat of one of the cars.

Defendant also called Annie Anderson, whose testimony corroborated that of her daughter, Elizabeth Anderson.

Defendant testified that on the night of his arrest, he was breaking glass in a plastic bag outside his sister's apartment building at 1519 South Tripp when some police officers pulled up. After the officers asked him to put down the glass and hammer, they searched and handcuffed him and then put him in a police car. Defendant stated further that the officers asked him where his car was located, and he answered that it was parked across the street. The officers then searched his car and found a leather travel bag containing $9,500 in cash. Defendant testified that the officers confiscated the money and then searched the area behind the apartment building. According to defendant, the police officers had a brown paper bag with a bottle in it when they came back to the front of the building. Defendant testified that he had never seen the bag or the bottle before.

The State called Officer Edward J. May, who testified that at about 12:30 a.m. on October 9, 1988, he was on duty with Officer Jack DeDore and Sergeant Thomas Eichler. They were patrolling in an unmarked police car area near 1519 South Tripp. May stated that Sergeant Eichler recognized defendant as he walked through the gate in a gangway between two buildings. Defendant was carrying a brown paper bag in his right hand. May stated that the officers were 15 or 20 feet away from defendant when he emerged from the gangway. Upon making eye contact with the officers, defendant walked through the gate, took two steps, and threw the paper bag onto the sidewalk to his left. The bag landed about four feet away from defendant, and he then turned around and walked back down the gangway.

May testified that he then got out of the car and picked up the brown paper bag. Inside, he found a leather bag which was filled with money. Also inside the brown paper bag were two plastic bags which contained a white powdered substance, a couple of small scales and white papers. May testified that the leather bag contained several thousand dollars and defendant's identification card issued by the Secretary of State.

Thereafter, the officers arrested defendant, who was kneeling down and breaking glass near the side of the building. May testified that there were no women on the porch when he picked up the brown paper bag, but some women did come out of the building after defendant was arrested. May specifically denied searching defendant's car or any of the cars in the backyard.

Officer Jack DeDore testified to substantially the same facts as Officer May.

In rebuttal, defendant called his sister, Dolores Harris, also known as Dolores Branch. Ms. Harris testified that defendant was arrested at about 12:30 a.m., while she and two other women watched from the front porch of 1519 South Tripp. Ms. Harris stated that after they arrested defendant, the officers searched some cars which were parked in the backyard. When they returned to the front of the building, the officers had a brown paper bag. Ms. Harris stated that her brother did not have a paper bag in his hand prior to his arrest. She testified further that the officers did not search defendant's car.

The trial court denied defendant's motion to quash arrest and to suppress evidence. Thereafter, defendant was tried and convicted of possession of a controlled substance with intent to deliver.

At the sentencing hearing, the prosecutor argued that defendant's two convictions for Class X felonies mandated consecutive sentences under section 5—8—4(h) of the Unified Code of Corrections (Code), which mandates consecutive sentences where a defendant has been convicted of two felony charges, one of which was committed while the accused was on pretrial release for the previous offense. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4(h).) The prosecutor also argued that defendant could be sentenced to an enhanced term based upon his two felony convictions during a 10-year period. This argument was predicated upon section 5—5—3.2(b)(1) of the Unified Code of Corrections, which permits an extended term where a defendant has been convicted of a felony, after having been previously convicted of the same or greater class felony and where that conviction occurred within 10 years after the previous conviction. Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(b)(1).

The trial judge sentenced defendant to a term of eight years and ordered that this penalty be served consecutive to the 12-year sentence imposed for the first offense which occurred on July 16, 1988.

Defendant initially asserts that the trial court erred in denying his motion to quash arrest and to suppress evidence where the police had not obtained a search warrant and where the State failed to prove that defendant had abandoned the brown paper bag.

■ Fourth amendment protection against an unreasonable search and seizure does not extend to abandoned property because the possessor's right of privacy in the property has been terminated. (*People v. Hoskins* (1984), 101 Ill. 2d 209, 220, 461 N.E.2d 941, *cert. denied* (1984), 469 U.S. 840, 83 L. Ed. 2d 81, 105 S. Ct. 142.) Abandoned property may, therefore, be searched and seized without a warrant or a showing of probable cause. (*Hoskins*, 101 Ill. 2d at 220.) Property has been held to be abandoned when dropped to the ground or left behind in a place accessible to the general public. *Hoskins*, 101 Ill. 2d at 219-20.

In the case at bar, Officer May testified that as he drove by the building at 1519 South Tripp, he observed defendant emerge from the gangway carrying a brown paper bag which he tossed away upon making eye contact with the officers. According to May, defendant walked through the gate in the gangway, took two steps, and threw the paper bag onto the sidewalk to his left. The bag landed about four feet away from defendant, and he then turned around and walked back down the gangway toward the rear of the building. May specifically denied searching defendant's car or any of the cars in the backyard. The testimony of Officer Jack DeDore corroborated that of Officer May. Although defendant denied ever having seen the brown paper bag or the bottle contained therein, the trial judge was obligated to assess the credibility and weight of the testimony and to resolve any conflicts therein. *People v. Clay* (1973), 55 Ill. 2d 501, 504, 304 N.E.2d 280.

The testimony of Officers May and DeDore established that when defendant saw the police officers, he deliberately dropped the brown paper bag onto the sidewalk outside of the gate in the gangway and then walked away. By this conduct, defendant demonstrated no possessory interest in the paper bag or its contents. Consequently, defendant's actions constituted a voluntary relinquishment of the property and any expectation of privacy therein. See *People v. Sylvester* (1969), 43 Ill. 2d 325, 327-28, 253 N.E.2d 429; *Hoskins*, 101 Ill. 2d at 220.

■ On a motion to suppress evidence, the defendant has the burden of proving the search and seizure were unlawful (Ill. Rev. Stat. 1991, ch. 38, par. 114—12(b); *Hoskins*, 101 Ill. 2d at 212), and a trial court's decision will not be reversed unless it is manifestly erroneous. (*People v. Galvin* (1989), 127 Ill. 2d 153, 162, 535 N.E.2d 837; *Hoskins*, 101 Ill. 2d at 212.) We find that the decision of the trial court was supported by credible evidence in the record and was not manifestly erroneous. We hold, therefore, that the trial court properly denied defendant's motion to quash arrest and to suppress the evidence against him.

Defendant next contends that the trial court erred in ordering that the sentences for his two convictions be served consecutively. As noted above, a motion to reduce a sentence is not required, and the failure to file such a motion will not result in waiver of the issue on appeal. *Thomas*, 193 Ill. App. 3d at 527.

Section 5—8—4(h) provides that "[i]f a person charged with a felony commits a separate felony while on pre-trial release or in pretrial detention in a county jail facility or county detention facility, the sentences imposed upon conviction of these felonies shall be served consecutively regardless of the order in which the judgments of conviction are entered." Ill. Rev. Stat., 1988 Supp., ch. 38, par. 1005—8—4(h).

At defendant's sentencing hearing, the prosecutor referred to section 5—8—4(h) and stated that the case involved "a situation where the statute mandates a consecutive sentence. The defendant had one case, he posted bond and committed a separate offense, and [the trial judge] found him guilty on both cases."

On appeal, defendant asserts that "[t]here is a total absence of any evidence in the [r]ecord" that he committed the October 9, 1988, offense while on pretrial release for the offense committed on July 16, 1988. We do not agree.

■ A court of review may consider and rely upon entries in the common law record when examining the propriety of consecutive sentences. (*People v. Shelton* (1990), 205 Ill. App. 3d 471, 479, 564 N.E.2d 226.) In the case at bar, the common law record reflects that defendant was arrested on July 16, 1988, for possession of a controlled substance. A cash bond was set at $27,000, and on August 9, 1988, a grand jury returned an indictment against defendant charging him with possession of a controlled substance with intent to deliver. Defendant was arraigned on this charge on August 26, 1988. On October 9, 1988, defendant was again arrested for possession of a controlled substance. This arrest arose out of events completely separate

and distinct from the events which resulted in the arrest of July 16, 1988. Defendant was convicted of both offenses after separate trials conducted in July 1990. Thus, the record establishes that defendant committed the October 9, 1988, offense while on pretrial release for the offense committed on July 16, 1988.

We hold that the instant record provides ample support for the imposition of consecutive sentences, and we find no abuse of discretion by the trial court.

For the foregoing reasons, the sentence imposed for defendant's conviction under indictment number 88—CR—12021 is affirmed. The conviction and sentence under indictment number 88—CR—20607 are affirmed.

Affirmed.

EGAN and RAKOWSKI, JJ., concur.