2022 IL App (2d) 200118-U
No. 2-20-0118
Order filed January 14, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CF-1101 |
| ALONTE M. BJORLIE, | ) ) ) | Honorable Ronald J. White, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Zenoff and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Defendant's convictions for possession of cocaine, heroin, and fentanyl with intent to deliver are affirmed. The trial court did not err in denying defendant's motion to suppress because the trooper had probable cause to search for marijuana. The court did not err in denying defendant's motion for a mistrial because the court gave an adequate curative instruction. Defendant could not show counsel rendered ineffective assistance by failing to object to expert opinion testimony because he failed to demonstrate prejudice. The evidence was sufficient to prove beyond a reasonable doubt that defendant had intent to deliver. Lastly, defendant failed to show the trial court abused its discretion when it imposed a term of 15 years' imprisonment where defendant was eligible for a term of 60 years' imprisonment. Affirmed.

¶ 2     Defendant, Alonte M. Bjorlie, appeals from his conviction for possession of various narcotics with intent to deliver. For the reasons that follow, we affirm.

¶ 3                                I. BACKGROUND

¶ 4     In May 2019, Deputy Lucas Wagner of the Winnebago County Sheriff's Office initiated a traffic stop after observing defendant commit a traffic violation. Wagner issued a citation, but also began to investigate the possible presence of cannabis in defendant's vehicle.[1] Deputies discovered contraband in the vehicle, arrested defendant, and subsequently discovered more contraband on his person. The State initially filed five charges that were later reduced to three: possession with intent to deliver (1) 15 to 100 grams of a substance containing cocaine (720 ILCS 570/401(a)(2)(A)) (West 2018); (2) 1 to 15 grams of a substance containing heroin (*id.* § 401(c)(1)); and (3) 1 to 15 grams of a substance containing fentanyl (*id.* § 401 (c)(1.5)).

¶ 5                 A. Hearing on Defendant's Motion to Suppress

¶ 6     Defendant filed a motion to suppress all physical evidence obtained during the stop. The trial court held a hearing on defendant's motion on August 5, 2019. Wagner testified as follows.

¶ 7     On May 7, 2019, at approximately 2:30 p.m., Wagner was on patrol. He observed a gray Impala stopped in a left-hand turn lane and saw that the driver was using his cell phone. He initiated a traffic stop due to the driver's use of the cell phone. Defendant was driving.

¶ 8     As Wagner approached the vehicle, he observed the smell of burnt cannabis. He also saw defendant putting money in the vehicle's center console. He asked defendant about the money, and defendant said he had won it at a casino. He obtained defendant's driver's license and returned

---

[1] Cannabis became decriminalized under Illinois law for adults 21 and over following passage of Public Act 101-0027 (eff. June 25, 2019).

to his vehicle. He did not ask defendant about the smell or request assistance after the initial approach, but he had formed the intent to conduct a search prior to making the second approach.

¶ 9    Wagner next entered defendant's information through a criminal history database and learned about defendant's criminal history. He digitally generated a warning for use of a cell phone while driving and re-approached defendant's vehicle. After issuing the warning, Wagner asked defendant about the smell of cannabis. Defendant said that he might have smoked cannabis in the car earlier. Wagner moved defendant to the back seat of his squad car and searched defendant's vehicle. While standing beside defendant, Wagner could not determine if the odor of cannabis came from defendant's person or his vehicle.

¶ 10    Wagner found approximately $5835 cash in the center console, a digital scale, a container of sandwich bags, and a white rock that weighed .01 grams and field tested positive for cocaine. He did not find any cannabis or a lighter, but he could still detect the odor of cannabis after removing defendant from the car. Wagner requested the assistance of another officer while walking back to his vehicle.

¶ 11    Wagner had been employed with the Sheriff's Office for seven years, he had participated in hundreds of cannabis-related arrests, and he had detected the odor of cannabis "[m]ore than hundreds" of times.

¶ 12    The State introduced the dashboard camera video of the stop. While generating the warning, Wagner called another deputy to ask about casinos "[be]cause I'd never been to a casino." The other deputy told him that "most of the time they give a receipt." Wagner issued the warning, searched defendant's person, placed defendant in the back seat of his squad car, and searched defendant's vehicle. Approximately six minutes had elapsed between Wagner's initial approach and his second approach, and the search itself lasted several minutes.

¶ 13    Wagner next removed defendant from inside his squad car to the front of his squad car, read defendant his *Miranda* rights, searched defendant's person a second time, placed defendant in handcuffs, and moved him to the back seat of his squad car. Defendant was placed under arrest and transported to the Winnebago County Jail.

¶ 14    Defendant argued that Wagner prolonged the stop after issuing the warning by continuing to question defendant about the odor of cannabis. He also argued that Wagner was not diligent in initiating the search. Because Wagner did not begin questioning defendant about the odor of cannabis until after issuing the warning, despite testifying that he smelled cannabis during his initial approach, he unduly prolonged the stop. Defendant also conceded that the total duration of the stop was not at issue.

¶ 15    The State argued that Wagner's testimony that he smelled cannabis during the initial approach was unimpeached and corroborated by the other evidence, he had authority to conduct a warrantless search after he smelled cannabis during the initial approach, and he was diligent in conducting the search.

¶ 16    The trial court denied defendant's motion to suppress. It found Wagner's testimony credible, that Wagner had probable cause to conduct the search because he smelled cannabis, and that Wagner had not unduly prolonged the stop. Defendant filed a motion to reconsider, which the trial court also denied.

¶ 17                                 B. Trial

¶ 18    At trial, Wagner testified consistently with his testimony at the suppression hearing. He further testified as follows. After the search, Wagner asked defendant about the items he found in the center console. Defendant "said he uses the baggies to put weed in them when he is giving weed to his friends." Another deputy, Nathan Fey, arrived at the scene to assist. Wagner and Fey

each searched defendant's person again and felt "a hard rock-like" item in his underwear. They put defendant in the back seat of his vehicle again and searched the car a second time. Wagner found two additional cell phones.

¶ 19    Wagner transported defendant and the items seized from defendant's vehicle, including the money, scale, baggies, box, cell phones, and suspected narcotics, to the Criminal Justice Center (CJC). There, he ran the money through an automatic money counter, which indicated that there was $5835. Wagner released defendant to the custody of Deputies William Fillers and Jacob Marino. He sealed the seized items into evidence bags and placed them in an evidence locker, except that he gave the cell phones to Fillers.

¶ 20    Wagner later received a baggie from Fillers, which contained two smaller bags, recovered from defendant's person in the course of Fillers's interview with defendant. The contents included "[a] white rock-like substance." He field-tested the contents of the bags. Wagner then sealed the contents into evidence bags and placed them in the evidence locker.

¶ 21    On cross-examination, Wagner acknowledged that he did not discover any cannabis and did not field test the scale or baggies recovered from the center console.

¶ 22    The State called Edward McGill, a forensic scientist with the Illinois State Police (ISP). The court found McGill to be an expert in the field of "drug chemistry analysis." McGill tested two substances. One was a "white chunky substance" weighing 18.4 grams which McGill concluded contained cocaine. The second was a "chunky substance" weighing 5.0 grams which McGill concluded contained heroin and fentanyl. The packaging containing those substances were introduced as People's Exhibit Nos. 2 and 3, respectively.

¶ 23    The State next called Fillers, a deputy with the Winnebago County Sheriff's Department who worked in the narcotics unit. The court found Fillers to be an expert in the field of "street

level narcotics." Fillers explained that users of cocaine and heroin would typically purchase "anywhere from a tenth to a gram" from dealers, who would typically possess larger quantities. Fentanyl, an analgesic pain medication, is often "used to cut the heroin to extend the life and make the high more impactful and stronger lasting."

¶ 24　　The State asked Fillers about his involvement in defendant's arrest. The court interjected, "2017 or," to which the State immediately replied, "Judge, 2019." Fillers testified that he saw defendant on May 7, 2019, at the location of the traffic stop. He also interviewed defendant that day at the CJC with Marino to determine if he was concealing any narcotics on his person. The State asked Fillers why he asked defendant if he was concealing narcotics, to which Fillers replied, "I am familiar with him from a previous investigation." Defendant objected, and the trial court immediately admonished the jury: "Ladies and gentlemen, I am going to ask you to disregard that comment, disregard that comment, any contact this officer had."

¶ 25　　Outside the presence of the jury, defense counsel reiterated the objection, arguing that Fillers's occupation as a narcotics investigator, in conjunction with his testimony that he was familiar with defendant from a prior investigation, irreparably harmed defendant despite the admonishment. Counsel also moved for a mistrial. The court denied the motion, stating:

> "The officer stopped right away. This was not intentional by the State. I admonished the jury to completely disregard. The officer didn't testify that the Defendant was involved in narcotic investigations or anything else, so it was just previous contact and that was it, so I do believe I properly admonished the jury. Let's make sure that no other witnesses have any testimony regarding whether or not they have any contact with the Defendant in the past. I don't know if they have or not. Your motion for mistrial is hereby heard and denied."

¶ 26    Fillers then testified that he and Marino asked defendant if he had anything concealed on his person. Defendant initially denied concealing anything, but later removed items from his underwear. Fillers gave the items to Wagner. The State presented Fillers with People's Exhibit Nos. 2 and 3, which Fillers identified as the items defendant removed from his underwear. People's Exhibit Nos. 2 and 3 were admitted.

¶ 27    Fillers and Marino continued to interview defendant about "[n]arcotics sales." Defendant said that "he purchased those from a male who supplies him with his narcotics and that he is involved in the sale of narcotics as a supplementary income, I believe."

¶ 28    Fillers explained that narcotics dealers frequently carry cash, sandwich bags are often used to package narcotics for sale at the street level, and digital scales are commonly used to weigh narcotics for packaging. The street value of 18 grams of cocaine was approximately $1800, the street value of 5 grams of heroin was approximately $500, and the street value of fentanyl was between $20 and $50 per gram. Based on his training and experience, Fillers described the contents of People's Exhibit No. 3 as "very airy, very hard" with "larger chunks" and stated that it appeared to be crack cocaine. He also described the contents of People's Exhibit No. 2 as "off-white or grayish" and "in large chunks," adding that "the gray in color heroin is often times laced with Fentanyl."

¶ 29    The State presented Fillers with People's Exhibit No. 6, which Fillers identified as the cell phones given to him by Wagner. Fillers explained that drug dealers often have multiple cell phones to keep their drug transactions separate from family and friends. He also identified one of the phones as a flip phone. Based on his training and experience, Fillers explained that flip phones are cheaper and more readily available, so it is easier to switch phones and phone numbers. Lastly, Fillers concluded that the drugs recovered during the investigation were intended to be delivered.

¶ 30    The State next called Marino, a deputy with the Winnebago County Sheriff's Department who worked in the narcotics unit. Marino interviewed defendant with Fillers on May 7, 2019. Marino testified consistently with Fillers regarding the interview with defendant.

¶ 31    The State rested. Defendant moved for a directed verdict, which the court denied. Defendant declined to testify and the defense rested without presenting additional evidence.

¶ 32    The jury found defendant guilty on all three counts. Defendant filed a motion for a new trial, arguing that (1) the State failed to prove defendant guilty beyond a reasonable doubt; (2) the trial court's denial of his motion to suppress was error; (3) the trial court's denial of defendant's motion for a mistrial following Filler's reference to a prior interaction with defendant was error; (4) defense counsel rendered ineffective assistance by (i) failing to object to improper opinion testimony by Fillers and (ii) failing to object to improper expert testimony by McGill without proper foundation; and (5) the cumulative effect of these trial errors denied defendant a fair trial.

¶ 33    The trial court held a hearing on defendant's motion. First, the court conducted a *Krankel* inquiry, finding that there was no factual basis to support defendant's ineffective assistance of counsel claim. Defendant devoted the remainder of his hearing to arguing that (1) Fillers should not have been recognized as a qualified expert and (2) his unelicited testimony that he knew defendant from a prior investigation denied defendant a fair trial. The court denied defendant's motion for a new trial.

¶ 34                                C. Sentencing

¶ 35    The trial court held a sentencing hearing in November 2019. The court stated that it reviewed defendant's presentence investigation (PSI) report and observed that defendant was eligible for an extended-term sentence of 30 to 60 years for count I. The State presented no additional evidence in aggravation.

¶ 36    In mitigation, defendant presented two exhibits and gave a statement. The exhibits included a letter from defendant's mother and a report prepared by Alva Paige with the Reformers Unanimous Program indicating that defendant had completed the program and had "a positive attitude, great potential."

¶ 37    The trial court indicated that it had considered defendant's PSI report, his exhibits, his statement, and the arguments of counsel. It noted defendant's youth, that he had two young children, and that he had expressed remorse. However, it also noted defendant's history of drug use and his violation of probation from a 2017 guilty plea involving drug charges. The court believed that defendant's character and attitude indicated he was likely to reoffend and that deterrence was an important factor in the sentence.

¶ 38    The trial court sentenced defendant to 15 years' imprisonment on each charge, to run concurrently, with 3 years' mandatory supervised release (MSR) on count I and 2 years' MSR on each of counts II and III.

¶ 39    Defendant filed a motion to reconsider sentence, arguing that (1) his sentence was excessive in light of his minimal criminal history and potential for rehabilitation; (2) the trial court disregarded the financial hardship defendant's family would face while he was incarcerated; (3) the finalized PSI was not timely tendered to the trial court, preventing the court from fully considering the report; and (4) the trial court failed to consider defendant's rehabilitative potential. The court denied the motion.

¶ 40    Defendant timely appealed.

¶ 41                                    II. ANALYSIS

¶ 42    Defendant raises several claims on appeal: (1) the trial court erred when it denied his motion to suppress; (2) the trial court erred when it denied his motion for a mistrial; (3) trial counsel

provided ineffective assistance; (4) the evidence was insufficient to sustain his conviction; and (5) his sentence was excessive.

¶ 43                                    A. Motion to Suppress

¶ 44    Defendant first challenges the trial court's ruling on his motion to suppress. A trial court's findings of fact are entitled to great deference and will be reversed only if against the manifest weight of the evidence. *People v. Bonilla*, 2018 IL 122484, ¶ 8. " 'A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.' [Citation.]" *People v. Banks*, 2020 IL App (2d) 180509, ¶ 25. The court's legal ruling on a motion to suppress is reviewed *de novo*. *Bonilla*, 2018 IL 122484, ¶ 8.

¶ 45    While conceding that the initial stop was lawful, defendant insists that it became unlawful when it was unreasonably prolonged. "[A] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." U.S. Const., amend. IV; *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). This can occur if a stop initiated for the sole purpose of issuing a citation is prolonged beyond the time reasonably required to complete that objective. *Caballes*, 543 U.S. at 407.

¶ 46    Defendant argues that the evidence obtained during the stop should have been suppressed because Wagner impermissibly extended the stop beyond the time reasonably required to complete the purpose of the stop—to issue a traffic citation. He argues that the purpose of the stop was complete after Wagner handed defendant the traffic citation; that Wagner prolonged the stop after purportedly smelling cannabis; and that the extension of the stop was unreasonable. He also argues that Wagner unreasonably extended the stop when he called another officer to inquire about how casinos operate prior to handing defendant the citation.

¶ 47    We reject these arguments. Wagner unequivocally testified that he smelled cannabis during his initial approach; that defendant had a substantial quantity of cash in his vehicle, which he claimed he had won at a casino; and that another officer told him casinos typically give a receipt for winnings. The trial court found this testimony credible. These observations gave Wagner probable cause to conduct an independent investigation for possession of cannabis and the right to search the vehicle for same. See *People v. Hill*, 2020 IL 124595, ¶ 35 (concluding that the defendant's delay in pulling over, the odor of cannabis, the presence of a loose "bud," and the defendant's admission to smoking cannabis earlier in the day established probable cause that evidence of a crime was present). In this context, asking another officer about casinos to gauge defendant's truthfulness and asking defendant about the presence of cannabis were clearly within the scope of the cannabis investigation. Wagner's inquiry into casino operations, moreover, corroborates his testimony that he formed suspicion unrelated to the traffic violation prior to handing defendant the citation. The court's credibility finding was based on Wagner's testimony and was neither arbitrary nor unreasonable; thus, it was not against the manifest weight of the evidence. Accordingly, the court did not err in determining  that Wagner had probable cause to investigate the possible presence of cannabis and denying the motion to suppress.

¶ 48    Defendant alternatively attempts to characterize Wagner's investigation after issuing the citation as a second seizure. It is well established that "an officer's inquiries into matters unrelated to the justification of the traffic stop do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *People v. Bass*, 2021 IL 125434, ¶ 18 (citing *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)); see also *Caballes*, 543 U.S. at 408 ("In our view, conducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner, unless

the dog sniff itself infringed respondent's constitutionally protected interest in privacy."). Wagner began questioning defendant about the smell of cannabis contemporaneous to handing him the citation; thus, this argument has no merit.

¶ 49    Defendant further contends that the smell of burnt cannabis, which provided the only basis to extend the stop, was insufficient because defendant denied that any drugs were present, Wagner could not distinguish whether the smell emitted from defendant's person or the vehicle, and no marijuana was found. Defendant argues that Wagner thus had no probable cause to search defendant's car or his person. This argument ignores that Wagner also testified that defendant admitted he may have smoked cannabis earlier that day, which corroborated his testimony that he smelled burnt cannabis, and defendant does not deny making that statement. The trial court found Wagner to be credible, and defendant does not persuade us that this finding was against the manifest weight of the evidence. Accordingly, we conclude that the trial court did not err when it denied defendant's motion to suppress.

¶ 50                                B. Motion for Mistrial

¶ 51    Defendant next challenges the trial court's ruling on his motion for a mistrial. "A mistrial should be granted where an error of such gravity has occurred that the defendant has been denied fundamental fairness such that continuation of the proceedings would defeat the ends of justice." *People v. Nelson*, 235 Ill. 2d 386, 435 (2009). We review the trial court's denial of a motion for a mistrial for an abuse of discretion. *Id.* A trial court abuses its discretion when its decision is arbitrary, fanciful, or unreasonable. *People v. Collins*, 382 Ill. App. 3d 149, 154 (2008).

¶ 52    Here, the trial court had granted defendant's motion *in limine* to bar any reference to defendant's 2017 convictions. At trial, the State questioned Fillers about his involvement in defendant's May 2019 arrest. The court interjected, "2017 or," to which the State immediately

replied, "Judge, 2019." When the State subsequently asked Fillers why he asked defendant if he was concealing narcotics, Fillers replied, "I am familiar with him from a previous investigation." The court immediately admonished the jury to disregard Fillers's comment.

¶ 53    Defendant argues that this sequence prejudiced him because, given Fillers's occupation as a narcotics investigator, the jury likely inferred that defendant was involved in criminal activity involving drugs in 2017. A curative instruction could not undo this prejudice; thus, it became "impossible" for defendant to receive a fair trial. We disagree.

¶ 54    The evidence offered against defendant as to his knowledge and possession of the narcotics (the sufficiency of which defendant does not challenge) was overwhelming—deputies discovered the narcotics during a search of defendant's person at the CJC. As we discuss below, evidence of defendant's intent to deliver was also overwhelming. Moreover, the State did not elicit the comments violative of defendant's motion *in limine*; rather, they were volunteered by Filler and the comments themselves were brief and vague. The trial court's immediate admonishment to the jury to disregard Fillers's comment cured what was otherwise a vague reference to a "prior investigation." We note that jurors are presumed to follow admonishments from the trial court and there is nothing about the nature of Fillers's remarks that suggest the jury would not have followed the trial court's admonition. See *People v. Wilmington*, 2013 IL 112938, ¶ 49 ("Absent some indication to the contrary, we must presume that jurors follow the law as set forth in the instructions given them."). In these circumstances, we cannot say that declining to declare a mistrial denied defendant fundamental fairness. Thus, we cannot say the court abused its discretion.

¶ 55                    C. Ineffective Assistance of Counsel

¶ 56    Defendant next argues that he received ineffective assistance of counsel in that trial counsel failed to object to improper opinion testimony. Specifically, defendant claims that Fillers offered improper expert opinion testimony when he testified that, based on his training and experience, he believed defendant had the intent to deliver the narcotics. Defendant contends that trial counsel's failure to object when the State elicited this testimony was deficient.

¶ 57    To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel and (2) resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). The defendant must demonstrate that, but for counsel's deficient performance, there is a reasonable probability that the result would have been different. *Strickland*, 466 U.S. at 694. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, *** that course should be followed." *Id.* at 697.

¶ 58    Defendant makes no argument as to how the result of the proceeding would have been different had counsel successfully objected to Fillers's opinion testimony. Indeed, the evidence belies any suggestion that the evidence would have been insufficient without Fillers's opinion that defendant had the intent to deliver a narcotic. There was abundant evidence of defendant's intent to deliver, i.e., the scale and baggies found proximate to a large amount of cash and contraband, multiple cell phones, additional contraband secreted on defendant's person, and defendant's own admission to selling cannabis. *Compare People v. Watkins*, 2015 IL App (3d) 120882, ¶ 46 (concluding that prior conviction for possession of cannabis with intent to deliver is admissible as evidence of intent to deliver cocaine). Defendant's sole contention that Fillers's opinion was mere speculation as to defendant's intent, even if so, does not establish prejudice given the amount of evident supporting the jury's intent finding. And, parenthetically, we note that an objection at trial

on the ground asserted here likely would have been rejected because experts are permitted to opine on the mental state of defendants under Illinois law. See *People v. Outlaw*, 388 Ill. App. 3d 1072, 1091 (2009) (holding that trial court did not abuse its discretion by allowing officer to testify as to his opinion that the defendant had intent to deliver). Accordingly, defendant cannot show any prejudice and his claim necessarily fails.

¶ 59                                    D. Sufficiency of the Evidence

¶ 60    Defendant next challenges the sufficiency of the evidence. To convict a defendant of possession of a controlled substance with intent to deliver, "the State must prove that the defendant (1) had knowledge of the presence of the narcotics, (2) had possession or control of the narcotics, and (3) intended to deliver the narcotics." *People v. Starks*, 2019 IL App (2d) 160871, ¶ 36; 720 ILCS 570/401 (West 2018). Defendant contends that his conviction must be reversed because the evidence was insufficient to prove beyond a reasonable doubt that he had the intent to deliver the narcotics. In the absence of direct evidence of intent, we consider whether the nature and quantity of circumstantial evidence supports an inference of intent to deliver. *Starks*, 2019 IL App (2d) 160871, ¶ 37. Relevant considerations include whether the quantity of drugs possessed was too large to be reasonably viewed as being for personal consumption, the presence and amount of cash, possession of cell phones, and possession of paraphernalia commonly associated with narcotics transactions. *Id.* We view the evidence in the light most favorable to the State, resolve all reasonable inferences in favor of the State, and determine if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id.* ¶ 36.

¶ 61    Here, the evidence overwhelmingly supported an inference that defendant had the intent to deliver. Deputies discovered more than 23 grams of narcotics on defendant's person which Fillers testified were typically sold on the street for approximately $100 per gram. Defendant had in his

center console approximately $5835 cash, sandwich bags, a scale, three cell phones, and a small white rock which field-tested positive for cocaine. Fillers explained how sandwich bags, scales, and multiple cell phones are often used in connection with drug sales. Fillers also testified that defendant admitted to occasionally selling narcotics to supplement his income. Viewing the evidence in the light most favorable to the State, we cannot conclude that no reasonable trier of fact could have found that defendant had the intent to deliver beyond a reasonable doubt. *Compare id.* ¶ 40 (concluding evidence that the defendant possessed a box of sandwich bags, 9.9 grams of cocaine packed into 20 smaller corners of bags, and a collapsible baton was sufficient to show intent to deliver).

¶ 62                                      E. Excessive Sentence

¶ 63    Finally, defendant contends that his sentence was excessive. Sentences within the statutory limits for the charged offenses are reviewed for an abuse of discretion. *People v. Flores*, 404 Ill. App. 3d 155, 157 (2010) (citing *People v. Coleman*, 166 Ill. 2d 247, 258 (1995)). "An abuse of discretion occurs if the trial court imposes a sentence that 'is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Id.* (quoting *People v. Stacey*, 193 Ill. 2d 203, 210 (2000)). We presume that the trial court considered all relevant factors in determining a defendant's sentence. *Flores*, 404 Ill. App. 3d at 158. To overcome this presumption, a defendant must identify "explicit evidence from the record that the trial court did not consider mitigating factors." *Id.*

¶ 64    Defendant argues that the existence of several mitigating factors renders his sentence an abuse of discretion. He contends that he "acted under strong provocation" in that he was a new father and he was forced to care for his own ill mother. Defendant also highlights that he was gainfully employed and completed various rehabilitative programs, including Pathways to Change,

Wake-Up Group, and Reformers Unanimous Program. However, defendant does not point to explicit evidence that the trial court did not consider these factors. We thus presume the trial court considered all relevant factors.

¶ 65    Here, the trial court stated that it considered all evidence presented by defendant. It also noted that defendant, who was convicted of a similar crime in 2017, was eligible for an extended-term sentence under count I (possession of at least 15 grams of cocaine), a class X felony. See 720 ILCS 570/401(a)(2)(A) (West 2018) (authorizing up to 30 years' imprisonment); 730 ILCS 5/5-5-3.2(b)(1) (West 2018) (authorizing an extended term sentence when a defendant has been convicted of a "same or similar class felony" within prior 10 years); *id.* § 5-4.5-25(a) ("The sentence of imprisonment for an extended term Class X felony *** shall be not less than 30 years and not more than 60 years."). The court sentenced defendant to a non-extended term of 15 years' imprisonment. We cannot say the sentence imposed by the trial court was greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.

¶ 66    Defendant last argues that his sentence was excessive compared to the sentences imposed in two other possession-with-intent-to-deliver cases. See *People v. Ellis*, 241 Ill. App. 3d 1034, 1036 (1993) (defendant sentenced to 12 years' imprisonment for possession of 240.9 grams of 95% pure cocaine); *People v. Peter*, 220 Ill. App. 3d 626, 627 (1991) (defendant sentenced to 12 years' imprisonment for possession of 240.51 grams 91% pure heroin). The Illinois Supreme Court, however, has already rejected excessive sentence claims based solely on cross-case comparisons. See *People v. Fern*, 189 Ill. 2d 48, 62 (1999) ("[A] claim that a sentence is excessive must be based on the particular facts and circumstances of that case. If a sentence is appropriate given the particular facts of that case, it may not be attacked on the ground that a lesser sentence was imposed in a similar, but unrelated, case."). We rejected defendant's claim that his sentence

was excessive based on the particular facts of his case. Accordingly, we conclude that the trial court's sentence was not an abuse of discretion.

¶ 67                                    III. CONCLUSION

¶ 68     For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 69     Affirmed.